Dewayne Thompson, CDCR no. T12115
_____
Name and Prisoner/Booking Number

CSP-Corcoran
_____
Place of Confinement

4001 King Ave (P.O. Box 8800)
_____
Mailing Address

Corcoran, ca 93212
_____
City, State, Zip Code

(Failure to notify the Court of your change of address may result in dismissal of this action.)

**FILED**

**Dec 01, 2022**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

Dewayne Thompson
_____
(Full Name of Plaintiff)          Plaintiff,

v.

(1) L. Addison, CNA
_____
(Full Name of Defendant)

(2) T. Nelson, CNA
_____

(3) J. Rocha, Corr. off.
_____

(4) A. Lopez, Corr. off
_____
                    Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. **1:22-cv-01545-HBK (PC)**
(To be supplied by the Clerk)

## CIVIL RIGHTS COMPLAINT
## BY A PRISONER

☑ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:

    ☑ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983

    ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).

    ☐ Other: _____.

2.  Institution/city where violation occurred: CSP-Corcoran _____.

## B. DEFENDANTS

1. Name of first Defendant: <u>L. Addison</u>                . The first Defendant is employed as:
   <u>Certified Nurse Assistant (CNA)</u>        at <u>CSP-Corcoran</u>            .
   (Position and Title)                    (Institution)
   <u>Acted under color of state law, sued in individual capacity</u>

2. Name of second Defendant: <u>~~T. Nelson~~ Dismissed</u>    . The second Defendant is employed as:
   <u>Certified Nurse Assistant (CNA)</u>        at <u>CSP-Corcoran</u>            .
   (Position and Title)                    (Institution)
   <u>Acted under color of state law, sued in individual capacity</u>

3. Name of third Defendant: <u>A. Lopez</u>                . The third Defendant is employed as:
   <u>Correctional officer</u>        at <u>CSP-Corcoran</u>            .
   (Position and Title)                    (Institution)
   <u>Acted under color of state law, sued in individual capacity</u>

4. Name of fourth Defendant: _____. The fourth Defendant is employed as:
   _____at_____.
   (Position and Title)                    (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?    ☑ Yes    ☐ No

2. If yes, how many lawsuits have you filed? <u>7</u> . Describe the previous lawsuits:
   approximately

   a. First prior lawsuit:
      1. Parties: <u>D. Thompson</u>        v. <u>W. Hill</u>
      2. Court and case number: <u>1:04-CV-05877 AWI-Sms-P</u>
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) <u>Dismissed</u>

   b. Second prior lawsuit:
      1. Parties: <u>D. Thompson</u>        v. <u>C. Mauck</u>
      2. Court and case number: <u>2:09-CV-03478 JAM-CMK</u>
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) <u>Settled for 3,400</u>

   c. Third prior lawsuit:
      1. Parties: <u>D. Thompson</u>        v. <u>D.W. Bradbury</u>
      2. Court and case number: <u>PR-CV-14-1988(WHO)</u>
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) <u>Dismissed</u>

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

<u>See 2A</u>

## B. Defendants (Continued)

5.) J. Rocha, the fifth Defendant is employed as a Correctional Officer at CSP-Corcoran and sued in individual capacity

6.) E. Olivias the sixth Defendant is employed as a correctional officer at CSP-Corcoran and sued in individual capacity

7.) R. Roqua is the seventh Defendant is employed as a Correctional Lieutenant at CSP-Corcoran and sued in individual capacity.

8.) E. Garcia is the Eighth Defendant employed as a Correctional Sergeant at CSP-Corcoran and sued in individual capacity

9.) J. Barrius is the Ninth Defendant employed as a Correctional Institutional security unit (ISU) Sergeant at CSP-Corcoran and Sued in individual capacity

   The Seven Defendants are Permissably Joined Pursuant to FRCP 18(a) and 20(a)(2) for multiple claims are against a single well as multiple Defendants who Plaintiff is seeking relief from jointly and/or seperately or alternatively from a series of occurences whereby facts and law common to Defendants arises in all 8 claims herein.

## C. Previous Lawsuits (Continued)

4.) D. Thompson v. M.P. Hernandez
Case no. 1:13-cv-00625-AWI (BAM) P.C.
Dismissed: Favorable Termination (Heck Bar)

5.) D. Thompson v. T. Adams
Case no. forgot
Settled $5000 deliberate indifference

6.) D. Thompson v. Ferrso
Case no. 2:20-cv-08241 SVW (KS)
Pending

7.) D. Thompson v. Nawaz
Case no. 2:20-cv-10448 SVW (SK)
Dismissed: failed to state claim for relief (deliberat medical indifference)

8.) D. Thompson v. Covarrubias
Case no. 2:22-cv-02106 SVW (KS)
Dismissed: failure to pay filing fee

### D. CAUSE OF ACTION

### CLAIM I

1. State the constitutional or other federal civil right that was violated: U.S. 1st Amendment

2. **Claim I**. Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☑ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Defendant L. Addison, certified Nurse Assistant (CNA) violated Plaintiff's U.S. First Amendment by falsifying rules violation report (RVR) that Plaintiff indecent exposed himself to her in retaliation for Plaintiff exercising his protected right to redress her misconduct under color of stat law.

    Plaintiff is duly declaring that on June 30, 2022, Defendant Addison retaliated against him by 1.) being a state actor who took adverse action against Plaintiff 2.) But for 3.) his exercising his First Amendment right to redress her misconduct 4.) her adverse action would have silenced an ordinary person of firmness and 5.) her adverse action did not further legitimate correctional goal.

    Hence, on June 30, 2022, Plaintiff was in crisis bed at CSP-Corcoran. CNA Alapisco was primarily assigned as the CNA to sit at Plaintiffs cellfront for a 1 on 1 observation. During which, Plaintiff being an exercise fanatic to alleviate stress and anxiety (inter alia) he sought approval from Alapisco to partially cover cell front window for privacy. Alapisco consented to Plaintiff's request and knew that Plaintiff would remove his smock so to exercise and bird bath. Before peering into cell, Alapisco would knock on cell front door. And once safe to observe in cell she would.

            See 3a

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

Addison took adverse action against Plaintiff for his grieving her misconduct culminating to her writing him a false disciplinary infraction of indecent exposure that led to a Domino effect of adverse actions.(See infra Claims 2-8). Adverse action did not further legitimate correctional goal, conducing to deterring Plaintiff exercising constitution.

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?     ☑ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim I?     ☑ Yes ☐ No
   c. Did you appeal your request for relief on Claim I to the highest level?     ☑ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

3

She would with no incident. (see Appendix B, disciplinary hearing results (DHR) and supplemental RVR, pg 4 and 5, Alapisco and Psychologist Houston Q and A's knock and observation standard with inmate patients with cell front window partially covered.)

Nevertheless, upon Defendant Addison relieving Alapisco for a short break, privacy for Plaintiff went awry. Addison with no consideration or heeding window partially being covered for privacy "lifted herself up high enough to look over window cover" (or placard Plaintiff allowed CNA Nelson to place on his cellfront window the day prior for privacy while Plaintiff exercised and bird bathed) absent of knocking, as she should have done (see Appendix B, pg 4 and 6 Psychologist Houston Q and A no. 1-2).

Addison unbothered or offended saw Plaintiff bird bathing. She simply asked him if he was alright while looking at his naked body. Wherefore, upset Plaintiff, coupled with incident a day prior (June 29, 2022) when she laughed at a ridiculing comment of his genital size by CNA Nelson who is of the opposite sex and who invaded Plaintiff's bodily privacy by intentionally, frequently, non-casually with no restriction and in close range watched Plaintiff exercise naked amiss of cellfront window after giving him an expectation of privacy by placing yellow placard on Plaintiff's cell front window, which Plaintiff allowed for it being harmless and in an isolated location in infirmary, under impression she would knock before looking in cell.

Ensuing, Plaintiff beelined to his cell-front window after covering himself in his smock and he aggressively (as she states in her RVR at appendix C) demanded for her to have courtesy and knock before looking in his cell while board (window cover) was up.

Undergoing Addison's inconsideration the day prior of her shaming him by laughing at the joke by Nelson in reference to his genital size as she called him "little man" coupled with her invading his bodily privacy and for his protection of being charged with indecent exposure, Plaintiff informed Addison that he would be writing her up for her misconduct. In response, Addison unbelievably said "Two can play that game" and instantly reported to officials nearby that Plaintiff exposed himself to her. Her lie was so spontaneous, she could not get it straight:

That is initially Addison alleged of having direct observation into Plain-

tiff's cell on day in question with no placard or window cover to his cell-front window and saw him exposing himself (See Appendix B, Addison Q and A no. 1-6, DHR and RVR supplement pg 4-5).

Nevertheless, she changed her allegations to plaintiff having placard on his cell front window that she looked over after "lifting herself up high enough" to do so and saw him exposing himself (see Appendix C, amended RVR and Appendix D, Addison original accounts dictated by Sgt Ortega and Lt. Staley).

Upon information and belief, Addison changed her allegations because video footage where incident occured contradicted her accounts that plaintiff insist is false.

Due to plaintiff suffering from Addison retaliatory false RVR, plaintiff regrets grieving and/or putting her on notice of grieving her adverse action (which is also protected) that would have chilled a person of ordinary person of firmness for plaintiff 1.) had yellow placard fixed to his cell front window for 90 days in punitive segregation identifying him as sex offender; wherefore, subjected him to death threats and/or threats of physical bodily harm by his neighbors Dominguez and Flores, among other inmates, and inmate carderos, who are known dangerous and violent inmates, 2.) deprivation of exercise yard (see claim 5, infra, 3.) discrimination by Hispanic Ad-seg officials (see infra claim 4) retaliation and conspiracy, see infra Claim 6-8)

Lastly, Addison adverse action did not further legitimate correctional goals. Rather it conduced to plaintiff being stressed, depressed and engage in self injurious behavior (SIB) by hunger striking (see Appendix E, mental health records).

3.b

**CLAIM II**

1. State the constitutional or other federal civil right that was violated: __U.S. Eight Amendment__
_____.

2. **Claim II.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: __Deliberate Indifference__.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Defendant Subjective falsification of rules violation report (RVR) Charging Plaintiff with indecent exposure (IEX) infraction out of retaliation culminated to deliberate indifference for charges and safety precaution of fixing Yellow Placard to his cell front window everywhere he was housed for days that Addison knew identified Plaintiff as sex offender to the public subjected Plaintiff to death threats and/or threats of physical harm by his neighbors Dominquez and Flores (cell 201, building 3A03) and Cardero Alberto (cell 224, 3A03) among other inmates, who are known to be dangerous and violent

Hence during Plaintiff unfair hearing where he was deprived of all of his liberty interest due process resulting in a rehearing currently pending adjudication upon composing complaint, the senior hearing officer (SHO) officer D.B. Hernandez asked Addison for Plaintiff in his examining her through SHO. "What does "Yellow Placard represent" since it was on Plaintiff's cell front window at time when alleged incident occured for privacy, despite Yellow Placard is used for inmates who exposes themselves. Addison responded, clearly "that the inmate is a sex offender..." However, SHO being arbitrary and unfair did not report Addison's response for being bias. Instead he reported question being irrelevant....(See Appendix D. DHR Q and A no. 6 by Addison Pg 4.) (See 4a)
_____.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

Addison's false RVR with culpable state of mind charging Plaintiff with IEX, culminated to him being denied a fair disciplinary hearing (but rehearing currently pending) objective death threats and/or threats of physical harm by known violent inmates who Plaintiff know will try and harm him upon having chance.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☑ Yes ☐ No
   b. Did you submit a request for administrative relief on Claim II? ☑ Yes ☐ No
   c. Did you appeal your request for relief on Claim II to the highest level? ☑ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
   _____.

4

Altough Plaintiff condoned Defendant T. Nelson Placing yellow Pla-card to his cell-front window for privacy while he exercised and bird bathed the duration of 1 on 1s at his cell front while in crisis bed, Plaintiff insist he allowed it for it was harmless due to environment being hospital away from inmate population and Plaintiff was located in an isolated location. Moreso, Plaintiff resorted to Placard for no-more than an hour while he exercised and bird bath during 1 on 1's which last no more than 10 days.

However, upon Addison drafting RvR of IEX on Plaintiff, the yellow Placard was fixed to his cell-front window for 90-days; thus, subjecting Plaintiff to death threats and/or physical threats of physical harm by his neighbors Dominguez and Flores well as Alberto Cardero (among other inmates) in vicinity of Punative segregation (EOP hub); 3AO3 at CSP-corcoran, where Plaintiff was housed, due to being identified as sex offender.

Upon Plaintiff bringing to Sgt Garcia's attention on September, 21, 2022, the death threats by Dominguez and Flores, who dramatized their threats by unequivocally sharpening manufactured knife, word got back to the violent inmate; thus, exacerbating Plaintiff harm of being labeled a snitch, which caused more inmates to despise Plaintiff and target him for serious harm or homicide. (See Appendix N, Grievance.)

Hence on September 21, 2022, Plaintiff's neighbors Dominguez and Flores (cell 2 o 1) tormented Plaintiff through the vent with racial slurs and ridicules of him being sex offender for his having yellow Placard on his cell front window. Moreso, they made promising threats to stab Plaintiff and slice his face when opportunity arise, which could occur on mainline (outside of Ad-seg) where Plaintiff has a good chance of encountering them. Moreso, their threats can be implemented for Plaintiff seen them slip (unlock) the handcuffs while in Ad-seg and control booth officials at times allegedly accidently open their cell door just so happens when Plaintiff is being escorted to his cell, next door to them, in restraints.

Dominguez and Flores also told Plaintiff to watch his back during showers and yard; thus, a threat Plaintiff knew was viable due to him know they could make darts, which is a sharp pointed paper clip that projects from a tube when blown.

While Dominquez and Flores were making their feasible threats, Plaintiff could hear them sharpening their manufactured knife or knives.

Due to Plaintiff enduring constant disruption by Dominquez and Flores, thus, depriving Plaintiff of sleep, causing anger, distress and anxiety, Plaintiff started to have thoughts of self harm. Therefore, he informed officer Coyle of him having suicidal ideations. And Coyle removed Plaintiff from his cell to be escorted to holding cell for suicidal evaluation.

While awaiting suicidal evaluation in holding cell, Plaintiff invoked for Sergeant Garcia, 3Ao3, 3rd watch who responded to Plaintiff approximately 5:45 pm-6 pm on Body Worn camera (BWC). There is where Plaintiff brought to his attention of his neighbors convincing threats and the knives, razors, and darts in their cell(s), as he pleaded to be moved to another cell.

Plaintiff was admitted to crisis bed for 24 hours evaluation. Upon discharge on September 22, 2022, Plaintiff returned to his cell to be tormented and traumatized by Dominquez and Flores's serious threats. During which they called Plaintiff a "Snitch..." while assuring him of them going to stab him and slice his face, as they ensued to boast how the officers Plaintiff ran to for protection work for them and told them what Plaintiff told them. Simultaneously Plaintiff could hear them unequivocally sharpening their knife against the wall as a statement officers favor them well as fear.

Dominquez and Flores, tormented and traumatized Plaintiff with their threats for about two hours through the vent and out their cell door, which can be heard on officers BWC and audio video surveillance system (AVSS) in 3Ao3, A-section about 1pm-3pm.

Therefore, Dominquez and Flores's drama, other Hispanic inmates who associated and affiliated in same gang of them were aroused. They began hollering out their cell door, calling Plaintiff "Snitch" and sex offender and threatened to stab (put some led in Plaintiff) him the first chance they get.

Therefore, chaos, Plaintiff began having an anxiety attack, and he informed officers of him having chest pains. officer Coyle responded acknowledging the commotion towards Plaintiff by Dominquez and Flores and the slew of inmates affiliated with them.

4b.

To subdue the restless commotion while Plaintiff was next to Dominquez and Flores in 3A03, A-section, officer Coyle moved Plaintiff to cell 242, the opposite side of A-section shortly after Plaintiff returned to his cell (202) after being treated for chest pains.

Nevertheless, the threat of harm is everlasting while Plaintiff is imprisoned not only for Plaintiff being recognized as a "sex offender" but also as a "snitch" among the dangerous inmates on level four maximum and/or supermax security of whom Plaintiff will feasibly encounter in the future, which haunts him and have him hyper vigilant.

Then on November 3, 2022, inmate Alberto Cardero, who was in cell 224 when Plaintiff was bombarded with threats by Dominquez, Flores among their affiliates but moved to cell 248, tormented and made death threats towards Plaintiff for yellow placard identifying him as sex offender and word of mouth by Dominquez and Flores labeling Plaintiff as snitch.

Cardero pledged that he is going to stab Plaintiff first chance arising. And as a lesser means, Cardero carried out a desperate attack against Plaintiff with bio-waste by flooding the tier with a bucket filled with water mixed with urine once he was placed in upper c-section shower as a shower cleaner to clean shower.

Cardero intentionally directed the bio-waste towards Plaintiff's cell (242) that was next to shower as he called Plaintiff sex offender and snitch. (See Appendix S, hereto, witness springs declaration.)

4c

## CLAIM III

1.  State the constitutional or other federal civil right that was violated: __8th Amendment__
    __U.S. First Amendment__

2.  **Claim III.** Identify the issue involved. Check **only one**. State additional issues in separate claims.

    ☐ Basic necessities        ☐ Mail            ☐ Access to the court      ☐ Medical care
    ☐ Disciplinary proceedings  ☐ Property        ☐ Exercise of religion     ☑ Retaliation
    ☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____
                                     Void

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

    Based on chronology of events, facts, documentry evidence and inferences, Defendant A. Lopez, an official acting under color of state law, retaliated against Plaintiff for being aggrieved that Plaintiff grieved his misconduct by lying at his disciplinary hearing on August 5, 2022, for the IEX RVR by Defendant L. Addison. During which Lopez lied that he assisted Plaintiff prepare for hearing in being his staff assistant (S.A.) which denied Plaintiff a fair hearing; whereto, Plaintiff vented of grieving his dishonest misconduct and pursuing lawsuit post unfair hearing and the next day on August 6, 2022 about 7AM (See Appendix P. grievance for Lopez's misconduct. And in response, Lopez in a retaliatory manner told Plaintiff that he will be issuing him an RVR for threatening (him) staff, which fail through.  Lopez's misconduct in disciplinary hearing was investigated by Plaintiff's grievance. And Plaintiff was granted a rehearing (see Appendix Q granted grievance for RVR rehearing).
        Therefore, Lopez was aggrieved with Plaintiff. And based on chronology of events, facts and inferences retaliated against Plaintiff on August 26, 2022 by him along with Defendant officer Rocha subjecting Plaintiff to a retaliatory (See 5a).

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

    Defendants retaliated against Plaintiff for exercising his First Amendment (along with Eighth and Fourteenth). It conduced to discouraging him exercising his protected right in future. And their adverse action did not further legitimate correctional goal.

5.  **Administrative Remedies.**

    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                                        ☑ Yes  ☐ No

    b.  Did you submit a request for administrative relief on Claim III?                        ☑ Yes  ☐ No

    c.  Did you appeal your request for relief on Claim III to the highest level?              ☑ Yes  ☐ No

    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
        _____

**If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.**

Punative cell search not only for Plaintiff grieving Lopez's misconduct in disciplinary hearing but also for Plaintiff grieving about outdoors exercise yard deprivation while housed in EOP hub Punative segregation coupled with Plaintiff exercising his right to access mental health (for being a member of coleman class at the enhanced out patient (EOP) level of care in the mental health service delivery system (MHSDS)) and medical treatment due to exercise yard deprivation causing him to suffer from suicidal ideations and anxiety attacks causing chest pains (or constricted breathing) (see Appendix H, mental health records for exercise yard deprivation).

Therefore, on August 26, 2022, when Plaintiff was told by officer Andrade that (exercise) yard cages were filled (reserved for inmates on list for yard), Plaintiff alerted staff of having suicidal ideations and chest pains.

Defendant's Rocha and Lopez responded to Plaintiff and removed him from his cell for medical and mental health care. While being treated by medical Plaintiff emphasized in his venting about exercise yard deprivation of grieving and pursuing lawsuit for constitutional violation, which Defendants knew, needless for Plaintiff to say, for they 1.) frequently observed Plaintiff depositing grievances (602's) in grievance (602) box for yard deprivation 2.) They witnessed Plaintiff's self injurious behavior (SIB) by hunger striking and complaining to their superior Defendants E olivias and Roqua the responsible ones for managing exercise yard (outdoors) and ... yard deprivation (see claim V infra) and 3.) they frequently responded to Plaintiff's suicidal notice and chest pains from anxiety attack, due to yard deprivation.

With that being the background, on August 26, 2022, Lopez along with Rocha exaggerated safety and security and conducted a retaliatory, Punative cell-search on Plaintiff's cell under pretenses of it being a random, ironicly and non-coincidently, search post removing Plaintiff from his cell due to anxiety attack and suicidal ideation stemming from yard deprivation, which he emphasize in grieving

During inferred retaliatory, Punative cell-search, Defendant vandalized Plaintiff's cell by disorganizing his properly organized legal material. And they confiscated non-contraband personal items. That is but not limited to 1.) Preliminary civil complaint, hereof, and case citation 2.) disposed Plaintiff's breakfast and lunch they served Plaintiff

in cell feeding, which was the only food he had to eat and awaited to eat for fasting and after exercising during anticipated exercise yard; unfortunately Plaintiff had no food after exercising (intense), and he insist of being very hungry afterwards  3.) Coaxial cable to his television, Preventing Plaintiff from watching television due to having no reception. (See Appendix G, Grievance for Punative cell search and Appendix K cell search receipt.)

To be vindictive, Defendant Lopez making something from nothing, confiscated harmless, unweaponized state disposable shaving razor with guard that is commonly available to inmates by officials in and out of Ad-Seg and not clearly or specified in Title 15 or Department operation manual (D.O.m) as being a weapon absent impression of it being used as weapon. However, Lopez drafted Plaintiff an RVR for being in possession of deadly weapon, which is an infraction, A1, with the most severe punishment that is in a category with murderers.

Infraction was referred to District Attorney (D.A.) for felony prosecution. And Plaintiff was retained in Punative Segregation Pending adjudication of RVR that carried a five month seventeen day term in security housing unit (SHU), which Plaintiff served in Punative Segregation Pending D.A. response who has yet responded upon Plaintiff filing complaint. Moreso RVR is still Pending, feasible to be dismissed or mitigated. (See Appendix J, RVR.)

Lopez also confiscated Tylenol Pills from Plaintiff cell. And with vindictive joy he related to Plaintiff of should writing him an RVR (stacking) therefore to have him admitted to crisis bed, which under circumstances is an automatic admission for eight to ten days.

On Defendants body worn camera (Bwc), they sarcastically and pretensely demonstrated their retaliatory intent of searching Plaintiff cell, in a nutshell to the effect, for his and their Protection since Plaintiff like to file grievances and lawsuits (among other unnecessary comments of Plaintiff exercising his First Amendment).

Indeed, cell search by Defendants was not random but Planned to retaliate and harass Plaintiff for incident would not have occured if 1.) Plaintiff had not been grieving (verbally, which is also protected as writing, or written) about outdoors exercise yard deprivation 2.) had he

not sought mental health and medical care due to exercise yard deprivation. and 3.) among other things, being African American, (See infra, claim IV).

B.)   Then on September 2, 2022, approximately between 9AM-12:30PM on Rocha's BWC. while Plaintiff was attending structured group therapy for his mental health treatment, Defendant Rocha, campaign harassing retaliated against Plaintiff based on chronology of events facts and inferences by conducting another punative cell search (within a week) of previous one (Aug. 26. 2022) for Plaintiff grieving his and Lopez's misconduct on August 26, 2022 and confiscated state issued radio another officer provided to Plaintiff for entertainment due to Plaintiff to Plaintiff being at EOP level of care in mental health system... entailing him to have a TV or radio in his cell. And Plaintiff's inability to watch his television post initial punative cell search for Defendants confiscating coaxial cable to his television; thus thwarting reception.

Rocha being insidious left no cell search receipt for the radio he confiscated from Plaintiff's cell as he should have pursuant to Title 15 § 3287(a)(4). And he blatantly denied such act. But after canvassing Defendant E. Olivias on September 28, 2022, he confirmed on BWC at about 9:45 Am that Rocha was the officer who entered Plaintiff's cell and confiscated radio September 2, 2022.

Therefore, correlating to him being culprit as well to planting state razor in Plaintiff's cell; after Lopez charged Plaintiff with state issued disposable razor being a deadly weapon, that Plaintiff discovered after noticing state radio mysteriously missing. Plaintiff instantly turned state razor over to Sgt Garcia upon discovering it on September 2, 2022 (See Appendix L, Grievance).

Defendants adverse actions out of retaliation for Plaintiff exercising his First Amendment (to access grievance system); his Eighth Amendment (to access medical and mental health) and Fourteenth Amendment (to a fair disciplinary hearing) did not further legitimate correctional goals. And it has conduced to discouraging (silencing) Plaintiff to exercise his constitutional protected right for the ramifications are getting to be too much of a hardship.

## CLAIM IV

1. State the constitutional or other federal civil right that was violated: U.S. 14 Amendment
.

2. **Claim III.** Identify the issue involved. Check **only one**. State additional issues in separate claims.

☐ Basic necessities ☐ Mail ☐ Access to the court ☐ Medical care
☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
☐ Excessive force by an officer ☐ Threat to safety ☐ Other: Discrimination .

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Plaintiff is duly declaring, based on chronology of events, facts and inferences for his being African American. Defendants invidiously discriminated against him in addition to retaliating by conducting punitive cell searches and drafting (exaggerated) rule violation reports (RVR) towards African Americans, which subjected Plaintiff to dissimilar treatment by Defendants in comparison to Hispanic inmates who they treated Preferentially. Saying that, Plaintiff insist that Defendants did not routinely conduct systematic, random cell searches. They only searched cells of invidious inmates of whom uncoincidentally just so happen to be African American (Black) that aggrieved them (Defendants officer A. Lopez and J. Rocha). Therefore Punative cell search and exaggerated RVR drafted by Lopez charging Plaintiff with disposable state razor in no form of a weapon when it is no rule clearly defining unaltered state razor as a weapon well as Plaintiff never received any rules state razor as deadly weapon Plausibly occured for Defendants invidious discrimination towards Plaintiff due to his being African American. For example Defendants knew Plaintiff's neighbors Dominguez and Flores in 3A03, 201 E0P hub well as Alberto Cardero (who was in cell 224 at time mentioned herein) who are
(See 6a)

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
Defendants Rocha and Lopez invidiously treated Plaintiff dissimilar to similar situated Hispanic inmates by subjecting him (among African Americans) to gratuitous treatment in comparison to Hispanics who they treated preferential. .

5. **Administrative Remedies.**

   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☑ Yes ☐ No

   b. Did you submit a request for administrative relief on Claim III? ☑ Yes ☐ No

   c. Did you appeal your request for relief on Claim III to the highest level? ☑ Yes ☐ No

   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

**If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.**

6

Hispanic inmates had knives and state razors that they were getting by officials during showers, as Plaintiff was getting also, in their cell. And they committed serious rule violations that Defendants witnessed. Nevertheless Defendants never drafted an RVR for their serious infraction or conducted so much as a random, scour, cell search on their cell when they had just cause and reasonable suspicion to do so.

Hence, for example, on September 2, 2022, Plaintiff Hispanic neighbors Dominguez and Flores intentionally shattered their cellfront window after a disagreement between them and another officer. Defendants witnessed shattered window but stayed dormant insofar-as they did not move inmates from cell despite it being deemed a hazard and shall have been redlined for staff security responsibility. Protocol or searched for reasonable suspicion to confiscate item used to shatter window. Which Plaintiff insist was the undisputable sound of apparent contraband metal that they did not try and hide as they would drop metal on ground to let Plaintiff know according to his belief that they had metal knives and they used on multiple occasions to bang on steel door when hostile towards officials, which attracted officers Garcia attention September 11, 2022, approximately 8:45 PM BWC, as he keyed in to the eerie contraband metal on steel door banging sound. But did nothing.

Rocha and Lopez witnessed shattered cell front window of Flores and Dominguez and only laughed and joked about it, asking "Who made them mad" (See their, Lopez and Rocha's BWC September 2, 2022). Defendants did not draft them RVR, despite them boldly admitting to Defendants of shattering cell front window. However, same day, September 2, 2022, between 9AM-12:30PM when Plaintiff was at therapy group, Defendant Rocha insidiously entered Plaintiff's cell and confiscated state issued radio and during which connect him to the state razor planted in Plaintiff's cell post Defendant Lopez drafting RVR for Plaintiff possessing deadly weapon by possessing an unweaponized state razor.

Plaintiff is assured Dominguez and Flores was not written up foremost by Defendants for shattering cellfront window who had a proclivity to draft RVR's against Blacks, such as Plaintiff, for their infraction and they had a duty to draft RVR upon becoming aware of inf-

raction. But they did not for upon facts and inferences being discrim-
inative. And Plaintiff is assured Defendant derilicted to draft
Dominguez and Flores an RVR for Preferential treatment for 1.) When
Dominguez and Flores tormented Plaintiff through the vent (interalia)
for getting RVR and D.A. referral for simple unweaponized state
razor as a deadly weapon, they proudly boasted and said with
pride that officers work for them; don't mess with them even
though they know they're dirty(illegal) foremost, they let it be
known that they can bust out their cell window and not get a
write up and taunted Plaintiff with betting that he can not do the
same as they mentioned Brown pride and 2.) upon Dominguez and
Flores getting window repaired, Plaintiff heard Defendant officer
Lope joke with them at their cell front of them getting a pass that
time. The next time it is going to cost them $200.00 and a write up(RVR),
which angered Plaintiff to call him a racist. For which Plaintiff grieved
their discrimination (see Appendix L and m, grievance)

Moreso, Lopez and Rocha knew Dominguez and Flores well as
Alberto(Cardova)Cardero (cell 224 at time mentioned herein) among other
Hispanic inmates had in their cells manufactured knives and state
razors - that they were getting during shower by officials, as Plain-
tiff was getting, but was written up by Lopez(emphasis added), for
Plaintiff aggrieved to Defendants apparent intentional discrimination brou-
ght it to their attention, which Plaintiff knew of Dominguez, Flores and
Cardero's dangerous contraband possession for hearing them sharpening
their manufactured knives and banging state razor against sink in their
cell while shaving when he was in cell 125 and Cardero was upstairs
in cell 224 and when Plaintiff was in cell 202 and Dominguez and Flor-
es was his neighbors in cell 201.

However, Plaintiff's notice was disregarded (see Appendix L and m, griev-
ance advising officials of aforementioned inmates threat to safety and dispa-
rity treatment). And disregards was due to Preferential treatment Rocha
and Lopez demonstrated towards Hispanic inmates; whereas, with Blacks,
they treated dissimilar but unpreferential, which subjected Plaintiff
who is Black to punitive, retaliatory cell search and exaggerated RVR
of his possession of an unweaponized state razor as a deadly weapon.

CLAIM V

1.  State the constitutional or other federal civil right that was violated: __8th Amendment__

2.  Claim III. Identify the issue involved. Check only one. State additional issues in separate claims.
    - ☑ Basic necessities
    - ☐ Mail
    - ☐ Access to the court
    - ☐ Medical care
    - ☐ Disciplinary proceedings
    - ☐ Property
    - ☐ Exercise of religion
    - ☐ Retaliation
    - ☐ Excessive force by an officer
    - ☑ Threat to safety
    - ☐ Other: _____

3.  Supporting Facts. State as briefly as possible the FACTS supporting Claim III. Describe exactly what each Defendant did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

    While Plaintiff was housed in EOP hub, Punative segregation at CSP-Corcoran for indecent exposure RVR alleged by Defendant Addison, he was limited commonly to 3 hours but no more than in a good week to 3.5 hours out of alloted 10 hours of exercise yard per week due to Defendants E. Olivias and R. Roqua who were accountable for yard access for EOP hub arranging ... yard availability to overlap with structured group therapy (mental health) where Plaintiff was confined in a small phone booth size holding cage that was not fit for exercising (see Appendix I, exercise yard grievance). Plaintiff had a constitutional right (Eighth Amendment) to attend mental health group for alloted 10 hours per week for being a member of the Coleman class and ... group conducing to mental health treatment plan for coping skills well as sentence reduction for offering good time credit. And Plaintiff shall not have had to choose between constitutional right to attend exercise yard over structured group therapy to receive more than 3.5 hours out of alloted 10 hours of exercise yard per week when Defendants had opportunity to arrange for Plaintiff (among inmates) to receive make up yard on weekends. Nevertheless, both exercise yard and therapy
    (see 7a)

4.  Injury. State how you were injured by the actions or inactions of the Defendant(s).
    Defendants E. Olivias and R. Roqua deprived Plaintiff of the basic necessities to life by overlapping outdoors exercise yard with mental health structured therapy group; thus, making him choose between constitutional right (while Plaintiff was in EOP hub/Ad-Seg for Iex infraction alleged by Addison).

5.  Administrative Remedies.
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☑ Yes  ☐ No
    b.  Did you submit a request for administrative relief on Claim III?  ☑ Yes  ☐ No
    c.  Did you appeal your request for relief on Claim III to the highest level?  ☑ Yes  ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.

7

Group Shall have been Provided for 10 hours per week, unless therapy Group Provided exercise. only then its Schedule could overlap with exercise yard and satisy alloted time for Constitutional affairs coupled with legitimate correctional goals Title 15 § 3343(h).

Nevertheless, Defendants were aware of Plaintiff's... therapy Group overlapping with exercise Yard causing Plaintiff to choose therapy Group after attending exercise yard for an hour. However Defendants were monitering and approving logging of Plaintiff (among inmates) receiving his alloted 3.5 hours "per exercise yard" three (3) times a week for a total of 10 hours.

For example, Defendants had it set up for "regular" Yard to be available only "one time" on monday, wednesday and Friday from 9:30 Am to 12:30 PM. No make up yard because quarantine Yard was same time but only "one time" Tuesday, Thursday and Saturday and would collide with regular Yard. And on Sunday, Defendants designated it as a down day. (no Program) Contrary with findings to Plaintiff's grievance for exercise yard deprivation (see Appendix I). And to escape liability, Defendants would be untruthful by reporting Plaintiff attended yard or refused if yard was cancelled or if Plaintiff was unabled to attend due to having appointment(s) elsewhere.

Therefore by design, Plaintiff only had access to exercise yard three times out of the week for no more than an hour for it overlapping with... therapy Group. And yard was thwarted on weekends due to Defendants logging Plaintiff received 10 hours of yard within its access monday, wednesday and Friday, which caused Plaintiff to be confined to his cell stressed, depressed and angry, culminating to him hunger striking; wherefore, he lost approximately 30 pounds in 7 weeks from June 30, 2022 to August 16, 2022 and having Suicidal ideations that encouraged self injurious behavior (SIB) due to exercise yard deprivation that Defendants were aware of for they responded to his mental health crisis when he was removed from his cell for Suicidal ideations and Processed paperwork for his hunger strike (See Appendix E and H, mental health records due to exercise yard deprivation).

Plaintiff underwent approximately five months (from June 30, 2022 to November 2022) of exercise yard overlapping with therapy Group that

7a

limited him to no more than 3.5 hours of exercise yard per week due to Defendants Roqua and Olivias conscious disregard to excessive risk of harm to Plaintiff's health and causing him to undergo unnecessary wanton pain, stress and depression, before he forgoed his ...therapy groups to take advantage of his alloted 10 hours of yard.

Therefore, on weekends, nevertheless, when Defendants had sufficient staff and opportunity, including designated yard observation officer Cortez-Santos to arrange for make-up yard on weekends by reporting accurate time Plaintiff (among inmates) accessed ...yard during weekdays factored in with group therapy schedule overlapping, they disregarded such course but rather under pretenses exaggerated the 3.5 hours at most per week exercise yard to required alloted 10 hours for their misunderstanding, so long as they provided Plaintiff opportunity to alloted 10 hours of exercise yard monday, wednesday, and friday, despite it overlapping with group therapy they fulfilled their obligation of providing Plaintiff his alloted 10 hours of exercise yard for the week

Sergeant Guerrero and Defendant Lieutenant (Lt) R. Roqua were the supervising officials in EOP hub on weekends who Plaintiff would vent to in addition to grieving for being denied make-up yard on weekend when he only received commonly no more than 3 hours of exercise yard during weekday. Defendant would respond that Plaintiff received alloted 10 hours during yard access monday, wednesday, friday. Sergeant Silva who did exercise yard audit report on sunday well as Plaintiff's grievance (inmate 602) findings untruthfully reporting the same thing (see Appendix I, exercise yard deprivation grievance) due to Defendants falsified logging of Plaintiff's accessing 10 hours of exercise yard monday, wednesday and friday.

Claim VI

U.S. First Amendment Violation, Retaliation
(Administrative Remedies Exhausted, Appendix O hereto)

Plaintiff is pleading that for Defendant Addison's RVR charging Plaintiff with alleged indecent exposure (IEX) he was placed in 3A03 EOP hub, punitive segregation at CSP-Corcoran, where he was frequently deprived exercise yard; wherefore, Defendant Roqua was accountable and who Plaintiff grieved (see, supra, claim V).

Hence Roqua took retaliatory actions against Plaintiff based on chronology of events, facts and inferences. That is, after Plaintiff grieved, hunger struck, and frequent crisis bed admissions (see Appendix H, mental health records) due to... yard deprivation that Roqua and Olivias was accountable for, Roqua avenged Plaintiff grieving him by arbitrarily depriving him of due process in disciplinary hearing for allegedly delaying a peace officer (Defendant ISU, Sergeant Barrios) in his duty for J. Barrios investigating Plaintiff's allegations of sexual assault by Defendant Rocha during August 26, 2022 incident (see claim 3).

Barrios alleged that video footage omits sexual assault occurring; therefore, delayed his duty (see Appendix F, Barrios RVR).

Plaintiff maintains and maintained his innocence at disciplinary hearing on October 9, 2022, and he insisted on invoking video evidence well as evoking Barrios at hearing for questioning for questioning. Nevertheless, Roqua ensued to arbitrarily deny Plaintiff video evidence well as presenting Barrios at hearing for questioning, as he incredibly told Plaintiff to the effect that he was lying. Delaying a peace officer does not require showing video evidence (despite RVR being based on video evidence). In his response to Plaintiff's demands for video evidence and he begrudgingly told Plaintiff that he would see video footage at 602 (grievance) hearing that he knows he submitted because that is his specialty....

Moreso, when matters got racial, due to African American (Blacks) inmates protesting discriminative treatment by refusing to return to cell from small management yard (Smy)(caged yard)(see infra, claim 7), Roqua made reference to Plaintiff's people (Blacks) being a problem and never satisfied; let Plaintiff know of being no-different (a problem) with his 602's, hunger strikes and suicidal claims; which could only be in reference to Plaintiff grieving about yard deprivation because behavior he stressed by Plaintiff was in accordance to yard deprivation

Roqua's retaliatory conduct did not further legitimate correctio-
nal goals and has conduced to discouraging (silencing) Plaintiff
from exercising his constitutional rights in future for ramifications
are getting to be too much of a hardship: Roqua's apparent avenges
resulted into Plaintiff losing 90 days good time credit and privileges.
Wherehad Plaintiff not exercised his right upon information and beli-
efs, he would have received a favorable hearing and outcome, with
the exception of discrimination for Plaintiff being African American
(see infra, claim VII)

Claim VII

U.S. 14th Amendment Violation, Invidious Discrimination
Administrative Remedies Exhausted

On October 10, 2022, Defendant Roqua treated Plaintiff with disparity after atypically, casually, and without privacy appeared at his cell front for disciplinary hearing, delaying Peace officer (Defendant Barrios) in his duty.

Therefore, due to disciplinary hearing being conducted in an unusual manner absent privacy from other inmates on the tier, Plaintiff inquired reasoning for disciplinary hearing being conducted in such manner.

Roqua appearing upset and with an ax to grind, responded to the effect "Because your people want to hold my cases," compelled Plaintiff to elicit from Roqua the specific "People" of his reference, And Roqua unreluctant stated, "The Blacks." who then incredibly and undeterred stated in a racist manner, "who is always the Problem; never satisfied."

Roqua was apparently discriminative towards the Blacks for refusing to comply in returning to their cells after smy, recreational cage yard, recall. The Blacks, among other things, were protesting being treated with disparity in comparison to Hispanic inmates, who received favorable RVR hearings and committe actions for infractions leading to Ad-Seg placement and living conditions in EoP hub (Ad-Seg) where they were not subjected to punitive cell searches, deprived of canteen or punitive, retaliatory RVR's (among other things). Therefore, in nutshell, Blacks were defiant.

It was apparent Roqua had prejudice towards Black inmates, that conduced to him invidiously discriminating against Plaintiff in disciplinary hearing; wherehad, Plaintiff not been Black upon facts and inferences and chronology of events, he would have had a favorable hearing and adherence to his liberty interest due process to prove RVR being false and a cover up.

9

Claim VIII

28 U.S.C § 1985(3) conspiracy to deprive Plaintiff of due Process in serious disciplinary hearing

(Administrative Remedies Exhausted, Appendix O hereto)

Defendant Roqua conspired with Defendant J. Barrios to deprive Plaintiff of his liberty interest due process to cover up and discredit Plaintiff's sexual assault allegations against Defendant Rocha that occured during August 26, 2022 incident (claim 3).

Hence, on October 10, 2022, during disciplinary hearing for Plaintiff allegedly delaying officer J. Barrios in his duty, Roqua ensued to arbitrarily deny Plaintiff all of his constitutional Procedural due process to prove his innocence, i.e., video evidence and calling RVR staff J. Barrios at hearing for examination, inter alia.

Plaintiff alleged and sustains that on August 26, 2022, Defendant Roqua Rocha groped him through food port of his cell front during harassing strip search, post punative search of Plaintiff's cell.

Defendant J. Barrios is an Institutional Security Unit (ISU) sergeant who alleges during investigating Plaintiff's sexual assault allegations video footage "did not depict" sexual assault. Therefore Plaintiff is pleading he drafted him a falsified RVR of delaying him in his official duty (see Appendix F, RVR and supplemental RVR), moreso, as a cover up.

Since RVR is based on video evidence, Plaintiff adamantly invoked for it at disciplinary hearing that was arbitrarily denied and yet todate has not been produced for according to findings in investigative employee (I.E.) report by officer Sierra, "Video evidence is unavailable"(see Appendix F, I.E. report / RVR supplement).

Nevertheless, Roqua in midst of arbitrarily denying Plaintiff's due process revealed meeting of mind (among other unconstitutional state of minds) with Barrios by letting Plaintiff know his findings of guilt was based on honoring Barrios RVR and his "Recommendations" to find Plaintiff guilty; thus culminating to destroying Plaintiff's credibility in sexual assault allegations against Defendant Rocha well as covering up Plaintiff's allegations, which Plaintiff insists Rocha Roqua and Barrios acted in concert to accomplish pursuant to 28 USC § 1985(3) for findings of guilt was based on Barrios recommendations rather than (video) evidence.

10

## E. REQUEST FOR RELIEF

State the relief you are seeking:

Demand for Trial

Declaratory relief

Nominal Damages   .01¢

Punative Damages  jointly and/or severly  $100,000

Compensatory Damages Jointly and/or Severly $ 20,000

Pursuant to  28 USC §1746  and Fed. R. Civ. P. 56(e)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on __November 29, 2022__
            DATE                                      SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.