**FILED**

Dewayne Thompson, T12115
_____
Name and Prisoner/Booking Number
P.O. Box 290066, CSP SACRAMENTO
_____
Place of Confinement
Represa, Ca 95671
_____
Mailing Address
Ditto
_____
City, State, Zip Code

MAR 0 7 2023

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

(Failure to notify the Court of your change of address may result in dismissal of this action.)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

Dewayne Thompson
_____  )
(Full Name of Plaintiff)          )
                    Plaintiff,    )
                                  )
              v.                  )
                                  )
(1) L. Addison, CNA               )
_____  )
(Full Name of Defendant)          )
(2) J. Rocha, Corr. Off.          )
_____  )
(3) A. Lopez, Corr. Off           )
_____  )
(4) R. Roqua, Corr. Lt.           )
_____  )
                   Defendant(s).  )
☐ Check if there are additional Defendants and attach page 1-A listing them. )

CASE NO. 1:22-cv-01545HBK(PC)
_____
(To be supplied by the Clerk)

## CIVIL RIGHTS COMPLAINT
## BY A PRISONER

☐ Original Complaint
☒ First Amended Complaint
☐ Second Amended Complaint

RECEIVED

MAR 07 2023

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____DEPUTY CLERK

## A. JURISDICTION

1.  This Court has jurisdiction over this action pursuant to:
    ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
    ☐ 28 U.S.C. § 1331; <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971).
    ☐ Other: _____

2.  Institution/city where violation occurred: **CSP-CORCORAN** _____

## B. DEFENDANTS

1. Name of first Defendant: L.Addison . The first Defendant is employed as:
   Certified Nurse Assistance (CNA)                    at CSP- Corcoran
   sued in individual capacity
   (Position and Title)                    (Institution)

2. Name of second Defendant: A. Lopez . The second Defendant is employed as:
   Correctional officer                    at CSP-Corcoran
   sued in individual capacity
   (Position and Title)                    (Institution)

3. Name of third Defendant: J. Rocha . The third Defendant is employed as:
   Correctional Officer                    at CSP-Corcoran
   sued in individual capacity
   (Position and Title)                    (Institution)

4. Name of fourth Defendant: R. Roqua . The fourth Defendant is employed as:
   Correctional Lieutenant                    at CSP-Corcoran
   (Position and Title)                    (Institution)
   sued in individual capacity

If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?    ☒ Yes    ☐ No

2. If yes, how many lawsuits have you filed? __7__ . Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: D. Thompson                    v.    W. Hill
      2. Court and case number: 1:04-cv- 05877 AWI- SMS-P
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) Dismissed

   b. Second prior lawsuit:
      1. Parties: D. Thompson                    v. C. Mauck
      2. Court and case number: 2:09-cv-03478 JAM-CMK
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) settled 3,400

   c. Third prior lawsuit:
      1. Parties: D. Thompson                    v. D.W. Bradburry
      2. Court and case number: PR-cv- 14-1988(WHO
      3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) Dismissed

   see attachment 2a

If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.

## B. DEFENDANT(CONTINUED)

5.) E. Olivias the fifth Defendant is employed as a correctional officer at CSP-Corcoran and sued in individual capacity

6.) J. Barrios is the sixth Defendant employed as a Correctional Sergeant for Institutional Security Unit (ISU) at CSP-Corcoran ( but may be promoted and work at different institution) and sued in individual capacity.

    The seven Defendants are permissably joined pursuant to FRCP 18(a) and 20(a)(2) for multiple claims are against a single well as multiple Defendants who Plaintiff is seeking relief from jointly and/or severly or alternatively from a series of occurences whereby facts and law common to Defendant arises in all eight claims herein.

## C. PREVIOUS LAWSUITS(CONTINUED)

4.) D. Thompson v M.P. Hernandez
case no. 1:13-cv-00625 AWI(BAM)PC
results: Dismissed, favorable termination(Heck Bar)

5.)D. Thompson v T. Adams
case no. forgot
results: settled 5,000

6.) D. Thompson v J. Ferrso
case no. 2:20-cv-08241 SVW(KS)
Results: pending

7.)D. Thompson v Nawaz
case no. 2:20-cv- 10448 SVW(SK)
results: dismissed

8.)  D. Thompson v Covarrubias
case no. 2:22-cv-02106 SVW(KS)
results: dismissed w/out prejudice

2a

**CLAIM I.**

1.  State the constitutional or other federal civil right that was violated: _____
    _____

2.  **Claim II.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
    - ☐ Basic necessities
    - ☐ Mail
    - ☐ Access to the court
    - ☐ Medical care
    - ☐ Disciplinary proceedings
    - ☐ Property
    - ☐ Exercise of religion
    - ☒ Retaliation
    - ☐ Excessive force by an officer
    - ☐ Threat to safety
    - ☐ Other: _____

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

    Defendant L. Addison, Certified Nurse Assistance (CNA) violated Plaintiff's U.S. First Amendment by falsifying rules violation report (RVR) that Plaintiff indecent exposed himself to her in retaliation for Plaintiff exercising his protected right to redress her misconduct under color of state law or utilizing protected language. ¶ Hence, Plaintiff is duly pleading that on June 30, 2022, Defendant Addison retaliated against him by 1.) being a state actor who took adverse action against him 2.) BUT FOR 3.) his exercising his First Amendment right to redress her misconduct 4.) her adverse action would have chilled an ordinary person of firmness and 5.) her adverse action did not further legitimate correctional goal. ¶ On June 30, 2022, Plaintiff was in crisis bed at CSP-CORCORAN. CNA Alapsco was primarily assigned as the CNA to sit at Plaintiff's cell-front for a 1on1 observation. During which Plaintiff being an exercise fanatic to alleviate stress and anxiety ( inter alia) he sought approval from Alapisco to partially cover cell-front window for privacy. Alapisco consented to Plaintiff request and knew that Plaintiff would remove his smock to exercise and bird bath. Before peering into cell (see attachment 3a)
    _____
    _____
    _____
    _____

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
    Defendant Addison took adverse action against Plaintiff for his grieving her misconduct, culminating to Her drafting a false RVR of indecent exposure, which conduced to discouraging Plaintiff exercising his protected right and language and did not furhter correctional goals....

5.  **Administrative Remedies.** Exhausted (see appendix A)
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes   ☐ No
    b.  Did you submit a request for administrative relief on Claim II?  ☒ Yes   ☐ No
    c.  Did you appeal your request for relief on Claim II to the highest level?  ☒ Yes   ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
    _____

3

Alapisco would knock on cell front door. And once safe to observe in cell she would with no incident. ( See appendix B, disciplinary hearing results(DHR) and supplemental RVR, pg. 4-5, Alapisco and Psychologist Houston Q and A's knock and observation standard with inmate patients with cell front window partially covered.)

Nevertheless, upon Defendant Addison relieving Alapisco for a short break, privacy for Plaintiff went awry: Addison with no precautionary measures towards Plaintiff cell front window being partially covered, inferring for privacy, "lifted herself up high enough[sic] to look over window cover " ( or placard Plaintiff allowed CNA Nelson to place on his cell front window the day prior for privacy while Plaintiff exercised and bird bathed ) absent of knocking, as she should have done. ( See appendix B, pg 4 and 6 Psychologist Houston Q&A, no 1-2.)

Addison unbothered or offended saw Plaintiff bird bathing naked. She simply asked him if he was alright while looking at his naked body; wherefore, upset Plaintiff coupled with incident a day prior, June 29,2022, when she laughed at a ridiculing comment of his genit-al size by CNA Nelson who is the opposite sex who invaded Plaintiff's bodily privacy by intentionally, frequently, non- casually with no restriction and in close range watched Plaintiff exercise naked amiss of cell front window after giving him expectation of privacy by pla-cing yellow placard on Plaintiff's cell front window, which he allow-ed for it being harmless and in an isolated area in infirmary ( not to contradict pleads in claim II) under impression she would knock before looking in cell.

Ensuing, Plaintiff beelined to his cell front window after cove-ring himself in his smock and he aggressively ( as she states in her RVR at appendix C) demanded for her to have courtesy and knock before looking in his cell while window cover was up.

Undergoing Addison's unprofessional conduct the day prior for her laughing at the joke by Nelson in reference to his genital size as she called him "Little Man" coupled with her invading his bodily pri-vacy and for Plaintiff's protection not to be charged with indecent exposure, Plaintiff vented to Addison protected language of him going to write her up for her misconduct. In response, Addison unbelievably said "Two can play that game," and instantly reported to officials ne-arby that Plaintiff exposed himself to Her. Her lie was so spontaneous, she could not get it straight:

That is initially Addison alleged of having direct observation in-to Plaintiff's cell on June 30,2022 with no placard or window cover partially covering his cell-front window when she saw him exposing himself( see appendix B, Addison's Q&A, no 1-6 in DHR and RVR supplem-ent pg. 4-5).

Nevertheless, she changed her allegations to Plaintiff having Pla-card on his cell front window that she looked over after "Lifting her-self up high enough " and saw him exposing himself ( see appendix C, amended RVR and appendix D, Addison original accounts dictated by Sgt. Ortega and Lt. Staley).

Upon information and belief, Addison changed her allegations because video footage where incident occured contradicted her accounts that Plaintiff insist is false.

Do to Plaintiff suffering from Addison retaliatory False RVR, Plaintiff regrets grieving and/or using protected language of grieving her adverse action, which would have chilled an ordinary person of firmness for Plaintiff 1.) had yellow placard fixed to his cell-front window for 90 days in punative segregation, which identified him as sex offender; wherefore, subjected him to death threats and/or threats of physical bodily harm by his neighbors Dominguez and Flores, among other inmates, and inmate Cardero, who are known dangerous and violent inmates, 2.) deprivation of exercise yard (see claim V, infra), 3.) discrimination by Hispanic Administrative segregation (Ad seg) officials ( see infra claim IV)retaliation and conspiracy (see infra, claims VI-VIII).

Lastly, Addison's adverse action did not further legitimate correctional goals. Rather, it conduced to Plaintiff being stressed, depressed and engage in self injurious behavior (SIB) by hunger striking (see appendix E, mental health records).

In addition, Plaintiff was deprived his liberty interest during hearing to prove his innocnce and charges being false, which resulted in rehearing that has yet occured upon filing this complaint December 2,2022.

## CLAIM II

1.  State the constitutional or other federal civil right that was violated: U.S EIGHTH AMENDMENT

2.  **Claim II.** Identify the issue involved. Check **only one**. State additional issues in separate claims.
    ☐ Basic necessities       ☐ Mail           ☐ Access to the court    ☐ Medical care
    ☐ Disciplinary proceedings ☐ Property       ☐ Exercise of religion   ☐ Retaliation
    ☐ Excessive force by an officer ☐ Threat to safety ☐ Other: DELIBERATE INDIFFERENCE

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Claim II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

Defendant subjective falsification of rules violation report(RVR) of indecent exposure (IEX) out of retaliation culminated to deliberate indifference for charges and safety precaution of fixing yellow placard to his cell front window everywhere he was housed for 90 days subjected Plaintiff to death threats and/or threats of physical harm in the future by his neighbors Dominquez and Flores (cell 201, building 3A03) and Cardero Alberto ( cell 224, 3A03) among other inmates who are known to be dangerous and violent. Addison knew charges would cause Plaintiff to have yellow placard on his cell front window and him to be identified as sex offender. ¶ Hence, during Plaintiff's unfair hearing, when he was deprived of all of his liberty interest due process resulting in a rehearing currently pending adjudication upon filing complaint November 29,2022 (officially December 2,2022), the senior hearing officer (SHO) D.B. Hernandez asked Addison for Plaintiff in his examining her through SHO, "What does yellow placard represent," since it was on Plaintiff's cell-front window when alleged incident occured for privacy, despite yellow placard being used for inmates who exposes themselves. Addison responded, clearly that yellow placard represent the inmate to be a sex offender...." However, SHO being arbitrary see attachment 4a

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
Addison's false RVR with culpable state of mind charging Plaintiff with IEX culminated to him being exposed to objective death threats and/or threats of physical harm in future by known violent inmates who Plaintiff know will try and harm him upon having chance for being identified as sex offender

5.  **Administrative Remedies. Exhuasted**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                              ☒ Yes   ☐ No
    b.  Did you submit a request for administrative relief on Claim II?                    ☒ Yes   ☐ No
    c.  Did you appeal your request for relief on Claim II to the highest level?          ☒ Yes   ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

and unfair did not report Addison's response for being bias and to deprive Plaintiff of evidence (upon information and beliefs). Instead, he reported question being irrelevant ....( See appendix B, DHR Q&A no. 6 by Addison, pg 4.)

Althougm, Plaintiff insist he condoned T. Nelson placing yellow placard to his cell-front window for privacy while he exercised and bird bathed the duration of 1on 1 at his cell-front while in crisis bed, Plaintiff insist he allowed it for it was harmless due to environment being infirmary away from inmate population and Plaintiff was located in an isolated location. Moreso Plaintiff resorted to placard, after Nelson applied it to his cell front window to be funny, for no more than an hour while he exercised and bird bathed during 1on1, which last no more than ten (10) days.

However, upon Addison drafting RVR of IEX on Plaintiff, the yellow placard was fixed to his cell front window for 90 days; thus, subjecting him to death threats and/or physical harm threats by his neighbors Dominquez and Flores well as Alberto Cardero ( among other inmates) in vicinity of punative segregation EOP hub, 3A03 at CSP-Corcoran, where Plaintiff was housed, due to being identified as sex offender, which was Addison's objective intentions  to be sadistic and màlicious for it is k nown that sex offenders in prison are attacked by inmates

Upon Plaintiff bringing to Sgt Garcias attention on September 21,2022, the death threats in the future by Dominquez and Flores, who dramatized their threats by unequivocally sharpening manufactured knife, word got back to the violent inmates; thus, exacerbating Plaintiff harm for being labeled a snitch, which caused more inmates to despise Plaintiff and target him for serious harm or homicide.(see appendix N, grievance.)

Hence, on September 21,2022, Plaintiff's neighbor Dominquez and Flores (cell 201) tormented Plaintiff through the vent with racial slurs and ridicules of him being sex offender for him having yellow placard on his cell front window. Moreso, they made promising threats to stab Plaintiff and slice his face when opportunity arise, which can occur in future on mainline (outside of ad-seg) where Plaintiff has a good chance of encountering them.

Dominquez and Flores also told Plaintiff to watch his back during showers and yard; thus, a threat Plaintiff knew was viable due to him knowing they could make darts, which is a sharp pointed paper clip that is projected from a tube when blown. While Dominquez and Flores were making their feasible threats, Plaintiff could hear them sharpening their manufactured knife(knives).

Due to Plaintiff enduring constant disruption by Dominquez and Flores; thus, depriving him of sleep causing him to anger and distress with anxiety, Plaintiff started to have thoughts of self harm. Therefore, he informed Officer Coyle of him having suicidal ideations; wherefore, Coyle removed Plaintiff from his cell and escorted him to holding cage for suicidal evaluation.

While awaiting suicidal evaluation in holding cell, Plaintiff

While awaiting suicidal evaluation in holding cell, Plaintiff evoked for Sgt. Garcia, 3A03, 3rd watch who responded to Plaintiff approximately 5:45PM-6PM on body worn camera (BWC). There is where Plaintiff brought to his attention of his neighbors convincing threats and the knives, razors, and darts in their cell, as he pleaded to be moved to another cell for being in fear of his life. Moreso, for them being abled to carry out their threats while Plaintiff was next door to them for Plaintiff seen them slip(unlock) the handcuffs while in ad-seg being escorted to their cell, and control booth official at times allegedly accidently opened their door just so happen when Plaintiff was being escorted to his cell, next door (cell 202) to them while in restraints

Plaintiff was admitted to crisis bed for 24 hour evaluation. Upon him being discharged on September 22,2022, Plaintiff returned to his cell; nevertheless, Dominquez and Flores resumed to torment and traumatize Plaintiff with their serious threats and ridicules of him being a sex offender. During which they called Plaintiff a"snitch," while assuring him of them going to stab him and slice his face upon opportunity arising, as they boasted how the officers Plaintiff ran to for protection work for them. And they told them what Plaintiff said about them. Simultaneously, Plaintiff could hear them unequivocally sharpening their knife against the wall as a statement, upon information and belief, officers favor and fear them.

Plaintiff was tormented for about 2 hours by Dominquez and Flores with their threats through the vent and out their cell door; wherefrom they hollerd, which can be heard on officers, Defendant Lopez's BWC about 1PM-3Pm.

Therefore, Dominquez and Flores's drama, other Hispanic inmates who associate and affiliate in same gang as them were aroused. They began hollering out their cell door, calling Plaintiff"snitch"and " child molester" and threatened to stab (put some led in Plaintiff) him the first chance they get ( in future).

Therefore, chaos, Plaintiff began having an axiety attack, so he informed officers by hollering out His cell door of him having chest pains, due to restricted breathing when undergoing anxiety attack. Officer Coyle responded acknowledging the commotion towards Plaintiff by Dominquez and Flores and the slew of inmates affiliated with them.

To subdue the restless commotion while Plaintiff was next to Dominquez and Flores, Officer Coyle moved Plaintiff to cell 242, the opposite side of A-section where Plaintiff resided in cell 202 shortly after Plaintiff returned to his cell after being treated for chest pains.

Nevertheless, the threat of harm is everlasting while Plaintiff is imprisoned not only for Plaintiff being recognized as sex offender but also as a snitch ( a by product for being identified as sex offender) among the dangerous inmates on level four maximum and/or super-max security of whom Plaintiff will feasibly encounter in the future, which haunts him and have him hypervigilant due to Defendant Addison's

subjective falsified RVR of indecent exposure, which she knew would identify Plaintiff as sex offender of whom is objectively known to be attacked by inmates.

Then on November 3,2022, inmate Alberto Cardero, who was in cell 224 when Plaintiff was bombarded with threats by him, Dominquez and Flores, among their affilates, but moved to cell 248, six cells away from Plaintiff cell (242) tormented and made death threats towards Plaintiff for yellow placard identifying him as sex offender and word of mouth by Dominquez and Flores labeling Plaintiff as snitch.

Cardero pledged that he is going to stab Plaintiff first chance arising. And as a lesser means, Cardero carried out a desperate attack against Plaintiff with bio-waste by flooding the tier with a bucket filled with water mixed with urine once he was placed in upper C-section shower as a shower cleaner to clean shower.

Cardero intentionally directed the bio-waste towards Plaintiff's cell (242) that was next to shower, as he called Plaintiff sex offender names, such as child molester, and snitch. ( See appendix S, hereto witness Springs declaration and grievance notifying custody of Cardero's attack.)

4c

## CLAIM III

1. State the constitutional or other federal civil right that was violated: U.S. FIRST AMENDMENT
   _____

2. **Claim III.** Identify the issue involved. Check **only one.** State additional issues in separate claims.
   - [ ] Basic necessities
   - [ ] Mail
   - [ ] Access to the court
   - [ ] Medical care
   - [ ] Disciplinary proceedings
   - [ ] Property
   - [ ] Exercise of religion
   - [X] Retaliation
   - [ ] Excessive force by an officer
   - [ ] Threat to safety
   - [ ] Other: _____

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Claim III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   Based on chronology of events, facts, documentry evidence, and inferences, Defendant A. Lopez , an official acting under color of state law, retaliated against Plaintiff for being aggrieved that Plaintiff grieved his misconduct by lying in his disciplinary hearing on August 5,2022, for IEX RVR by Defendant L. Addison. During which Lopez lied that he assisted prepare for Hearing in being his staff assistant (SA), which denied Plaintiff a fair hearing ; wherefore, Plaintiff vented of grieving his deceptive misconduct and pursuing lawsuit post unfair hearing and the next day on August 6, 2022 about 7AM ( see appendix P. grievance for Lopez misconduct). In response, Lopez in retaliation told Plaintiff that he will be issuing him an RVR for threatening (him) staff, which fail through. ¶ Lopez's misconduct in disciplinary hearing was investigated by Plaintiff grievance. And Plaintiff was granted a rehearing ( see appendix Q, granted grievance for RVR rehearing). ¶Therefore, Lopez was aggrieved with Plaintiff. And based on chronology of events, facts and inferences retaliated against Plaintiff on August 26,2022 by him along with Defendant Officer Rocha subjecting Plaintiff to retaliatory, punative cell search not only for plaintiff grieving Lopez's misconduct in disciplinary hearing but also for Plaintiff grieving about outdoors exercise yard deprivation while housed in EOP hub punative segregation coupled with Plaint- see attachment 5a

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Defendants retaliated against Plaintiff for exercising his First Amendment ( along with eighth Amendment) well as Fourteenth, which conduced to discouraging him exercising his protected right in future. And their adverse action did not further legitimate correctional goals.

5. **Administrative Remedies.** Exhausted ( See appendix K )
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  [X] Yes  [ ] No
   b. Did you submit a request for administrative relief on Claim III?  [X] Yes  [ ] No
   c. Did you appeal your request for relief on Claim III to the highest level?  [X] Yes  [ ] No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
   _____

**If you assert more than three Claims, answer the questions listed above for each additional Claim on a separate page.**

iff exercising his right to access mental health ( for being a member of Coleman class at the enhanced outpatient (EOP) level of care in mental health service delivery system (MHSDS)) and medical treatment due to exercise yard deprivation causing him to suffer from suicidal ideations and anxiety causing chest pains ( or constricted breathing) (see appendix H, mental health records for exercise yard deprivation).

Therefore, on August 26,2022, when Plaintiff was told by Officer Andrade that exercise yard cages (small management yard [SMY]) were filled (i.e., reserved for inmates on list for yard) Plaintiff alerted staff of him having suicidal ideations and chest pains.

Defendant Rocha and Lopez responded to Plaintiff' and removed him from his cell for medical and mental health care. While being treated by medical, Plaintiff emphasized in his venting about exercise yard deprivation of grieving and pursuing lawsuit for constitutional violation, which defendants knew needless for Plaintiff to have said for they 1.) frequently observed Plaintiff depositing grievances (602) in grievance box for yard deprivation 2.) they witnessed Plaintiff's self injurious behavior(SIB) by hunger striking and complainting to their superior Defendants E. Olivias and R. Roqua the responsible ones for 3A03 ad-seg small management yard access and SMY deprivation ( see claim V, infra) and 3.) they frequently responded to Plaintiff's suicidal notice and chest pains from anxiety attack, due to yard deprivation.

With that being the background, on August 26,2022, Lopez along with Rocha exaggerated safety and security and conducted a retaliatory, punative cell-search on Plaintiff's cell under pretenses of it being random, ironicaly and non- coincidentaly; nevertHeless, for search occuring post removing Plaintiff from his cell due to anxiety attack and suicidal ideations stemming from yard deprivation, which Plaintiff emphasized ......... in grieving deprivation.

During inferred retaliatory, Punative cell search, Defendant vandalized Plaintiff's cell by disorganizing his properly organized legal papers ( materials). And they confiscated non-contraband personal items. That is but not limited to 1.) preliminary civil complaint hereof, and case citations 2.) disposed Plaintiff's breakfast and lunch they served him in cell feeding, which was the only food he had to eat and reserved until after outdoors exercise yard He anticipated  and for intermittent fasting. Unfortunately Plaintiff had no food after exercising (intense) during small management yard [SMY]he wounded up getting through sergeant orders and with the help of his clinician T. Sparks (Plaintiff insist he was very hungry afterwards) and 3.) coaxtial cable to his television, among other things, preventing Plaintiff from watching television due to having no reception. ( See appendix G, grievance for punative cell search and appendix K cell search receipt, which omit legal material and Plaintiff's breakfast and lunch they maliciously disposed of.)

To be vindictive, Defendant Lopez making something from nothing, confiscated Harmless, unweaponized state disposable shaving razor with guard that is commonly available to inmates by officials in and out of Ad-seg and not clearly or specificly in  any rules and regulations of California Department of Corrections or law of being a weapon absent prima facie of it being made into weapon or used as a weapon or razor witHout guard. However, Lopez drafted Plaintiff an RVR for being in possession of deadly weapon, which is an A1 ultimate infraction with the most severe punishment that is in the category with murderers.

Infraction was referred to District Attorney (D.A.) for felony prosecution. And Plaintiff was retained in punative segregation pending adjudication of RVR, which carries a five month seventeen day stay in security housing unit (SHU) or long term

restricted housing (LTRH), which Plaintiff served in punative segregation pending D.A. referral decision, which is in limbo todate upon filing tHis amended complaint well as RVR that is still pending, feasibly to be dismissed or mitigated for charges being exagerrated demurer. ( See appendix J, RVR.)

Lopez also confiscated Tylenol pills from Plaintiff's cell, which he contemplated exagerrating to punish Plaintiff in retaliation as he told Plaintiff with vindictive joy that he should write Plaintiff up for'pills to have him admitted in crisis bed, which under circumstances is an automatic admission for eight to ten days.

On Defendants body worn camera (BWC), they sarcasticly and pretentiously demonstrate their (retaliatory) intent for searcHing Plaintiff cell, in a nutsHell to the effect, Lopez stated, in speaking for him and RocHa, "We searched your cell for your and ours[sic] protection since you like to file grievances and lawsuits' (among other unnecessary comments of Plaintiff exercising his first Amendment.

Indeed cell search by Defendants was not random but planned to retaliate and harass Plaintiff for incident would not have occured if 1.) Plaintiff had not been grieving , verbally or written, about outdoors exercise yard deprivation well as Lopez violating his due process in disciplinary hearing for IEX alleged by Defendant Addison, 2.) had he not sought mental health and medical care due to exercise yard deprivation and 3.) among other things being African American (see infra, claim IV).

B.)   Then on September 2, 2022, approximately between 9AM-12:20PM on Rocha's BWC and 3A03, A-section avss(AVSS) while Plaintiff was attending structured group therapy for Hi mental health treatment, Defendant Rocha, campaign harassing, retaliated against Plaintiff based on chronology of events, facts and inferences by conducting another punative cell search ( Within a Week of previous one August 26,2022) and sadisticly confiscated state issued radio another officer provided Plaintiff for entertainment due to Plaintiff being EOP level of care in mental Health...system, entailing him to have a TV or radio in his cell. And Plaintiff's inability to watch his television post initial punative cell search for Defendants confiscating coaxial cable to his television; thus, thwarting reception.

RocHa being insidious left no cell searcH receipt for tHe radio tHe confiscated from Plaintiff's cell as He should have pursuant to CCR, Title 15 § 3287(a)(4). And he blatantly denied such act. But after canvassing Defendant E. Olivias on September 28,2022, he confirmed on his BWC at about 9:45AM that Rocha was the officer who entered Plaintiff's cell and confiscated radio September 2,2022.

Therefore, correlating to him being culprit as well to planting state razor in Plaintiff's cell, after Lopez charged Plaintiff with state issued disposable razor being a deadly weapon, that Plaintiff discovered after noticing state radio mysteriously missing. Plaintiff instantly turned state razor over to Sgt. Garcia upon discovering it on September 2,2022( see appendix L, grievance).

Defendants adverse action out of retaliation for Plaintiff exercising his First Amendment (to access grievance system); his Eighth Amendment (to access medical and mental health ) and fourteenth (to a fair hearing) did not furtHer legitimate correctional goals and it has conduced to discouraging (silencing) Plaintiff to exercise his constitutional protected right for tHe ramIfications are getting to be too much of a hardsHip.

CLAIM IV DISCRIMINATION

U.S FOURTEENTH AMENDMENT CONSTITUTION(ADMINISTRATIVE REMEDIES ARE EXHAUSTED,
APPENDIX L and M, grievance)  (Discrimination by Defendants A. Lopez and Rocha)

Plaintiff is duly declaring, based on chronology of events, facts and infer-
ences for his being African American, Defendants invidiously discriminated against
him in addition to retaliating by conducting punative cell searches and drafting
exaggerated rule violation report (RVR) towards African Americans, which subjected
Plaintiff to dissimilar treatment by Defendants in comparison to Hispanic inmates
who they treated preferentially.(That is Defendant A. Lopez and J. Rocha.)

Saying that, Plaintiff insist that Defendants did not routinely conduct syst-
ematic, random cell searches. They only searched cells of invidious inmates, of
whom uncoincidentally just so happen to be African American (Black) that aggrieved
them when writing them up  or opposing their unruly act. Therefore, punative cell
search and exaggerated RVR drafted by Lopez charging Plaintiff with disposable
state razor as a weapon(well as Plaintiff never received any rules identifying state
razor commonly available as a deadly weapon) plausibly occured  for Defendants invi-
dious discrimination towards Plaintiff due to his being African American.

For example, Defendants knew Plaintiff's neighbors Dominguez and Flores in 3a-
03, 201 EOP hub well as Alberto Cardero ( who was in cell 224 at time mentioned he-
rein ) who are Hispanic inmates, had knives and state razors, which they were getting
by officials during showers, as Plaintiff was getting also, in their cells. And they
committed serious rule violations that Defendants witnessed. Nevertheless, Defenda-
nts never drafted an RVR for their serious infraction or conducted so much as a
random, scour, cell search on their cell when they had just cause and reasonable
suspicion to do so.

Hence, e.g., on September 2,2022, Plaintiff Hispanic neighbors Dominquez and ~~Flores~~
Flores intentionally shattered their cell-front window after a disagreement between
them and another officer, Defendants witnessed shattered window but stayed dormant
insofar as they did not move inmates from cell, despite it being deemed a hazard
and shall have been redlined ( condemned) for staff security responsibility  proto-
col or searched for reasonable suspicion to confiscate item used to shatter window,
which Plaintiff insist was the undisputable sound of apparent contraband metal that
they did not try and hide, as they would drop metal on ground to let Plaintiff know
according to his belief that they had metal knives, which they used on multiple
occasions to bang on steel door when hostile towards officials, which attracted
Officer(s) Garcia's attention on September 11,2022, around 8:45PM on his BWC;thus,
causing him to key in to the eerie contraband metal on steel door banging sound, but
he did nothing.

Rocha and Lopez witnessed shattered cell-front window of Flores and Dominquez
and only laughed and joked about it, as they asked them, " Damn, who made you mad."
(see Lopez and Rocha body worn camera [BWC] September 2,2022. Defendants did not
draft them RVR, despite them boldly admitting to Defendants of shattering cell front
window; nevertheless, had that been Plaintiff they would have definately been
excited to write him an RVR for destruction of state property and charged him
about $200., the value of cell front window.

However, same day, September 2,2022, between 9AM-12:30PM when Plaintiff was
at therapy group, Defendant Rocha insidiously entered Plaintiff's cell and confisc-
ated state issued radio and during which connect him to state razor planted in Plai-
ntiff's cell post Defendant Lopez drafting RVR for Plaintiff possessing unweaponized

state razor, which he charged Plaintiff with possessing deadly weapon (see claim III for further detail).

Plaintiff is sure Dominquez and Flores was not written up, foremost, by Defendants for shattering cell-front window who had a proclivity to draft RVR's against Blacks, such as Plaintiff, for their infraction. And they had duty to draft RVR upon becoming aware of infraction, but they did not, for upon facts and inferences due to being discriminative.

Plaintiff is assured Defendants derilicted to draft Dominquez and Flores an RVR for preferential treatment for 1.) when Dominquez and Flores tormented Plaintiff through vent (inter alia) for getting RVR and D.A. referral for a simple unweaponized state razor as a deadly weapon, they proudly boasted and said with pride that officers work for them; they don't mess with them, even though they know they're dirty (illegal); foremost, they let it be known that they can bust out their cell window and not get a write up, as they taunted Plaintiff of willing to bet him that he cannot do the same thing wherefore, they mentioned Brown pride, and 2.)

Upon Dominquez and Flores getting window repaired, Plaintiff heard Lopez joke with them at their cell front of them"getting a pass"that time. The next time it is going to cost them $200 and a write up (RVR), which angered Plaintiff to call him a racist. For which Plaintiff grieved their discrimination (see appendix L and M, grievance on file).

Moreso, Lopez and Rocha knew Dominquez and Flores well as Alberto Cardero (misspelled Cardova),cell 224 at time mentioned herein, among other Hispanic inmates had in their cells manufactured knives and state razors-that they were getting during shower by officials, as Plaintiff was getting, but was written up by Lopez (emphasis added), for Plaintiff, aggrieved by Defendants apparent intentional discrimination brought it to their attention only to be ignored.

Plaintiff knew Dominquez, Flores, and Cardero had dangerous contraband for hearing them sharpening their manufactured knives and banging state razors against sink in their cell while shaving with them when he was in cell 125 and Cardero was upstairs in cell 224, just above Plaintiff, and when Plaintiff was in cell 202 and Dominquez and Flores was his neighbors in cell 201.

However, Plaintiff's notice was disregarded (see appendix L and M, grievance advising officials of aforementioned inmates threat to safety and security  and disparity treatment. Disregards was due to preferential treatment Rocha and Lopez demonstrated towards Hispanic inmates; whereas, with Blacks, they treated dissimilar but unpreferential, which subjected Plaintiff, who is Black, to punative, retaliatory cell search and exaggerated RVR of his possessing an unweaponized state razor as a deadly weapon.

6a

CLAIM V
U.S. EIGHTH AMENDMENT VIOLATION, DEPRIVATION BASIC NECESSITY TO LIFE (
ADMINISTRATIVE REMEDIES ARE EXHAUSTED, SEE APPENDIX I)

While Plaintiff was housed in EOP hub, punative segregation at CSP-Corcoran
for indecent exposure RVR alleged by Defendant Addison, he was limited commonly
to 3 hours but no more than 3.5 hours in a good week, out of alloted 10 hours of
exercise yard perweek due to Defendants E. Olivias and R. Roqua who were accountable
for small management yard access for EOP hub arranging yard availability to overlap
with structured group therapy ( mental health) where Plaintiff was confined in a
small phone booth size holding cage that was not fit for exercising ( see appendix
I, exercise yard grievance).

Plaintiff had a constitutional right( Eighth Amendment ) to attend mental hea-
lth group for alloted ten (10) hours per week for being a member of Coleman class
and ... group conducing to mental health treatment plan for coping skills well as
sentence reduction for offering good time credit.

Plaintiff shall not have had to choose between constitutional right to attend
exercise yard over structured group therapy to receive more than 3.5 hours of alloted
10 hours of exercise yard per week when Defendants had opportunity to arrange for
Plaintiff (among other inmates) to receive make up yard on weekend. Nevertheless,
both exercise yard and therapy group shave have been provided for ten hours per
week, unless ... therapy group provided exercise. Only then its schedule could
overlap with exercise yard and satisfy alloted time for constitutional affairs coupl-
ed with legitimate correctional goals (Title 15 § 3343(h)).

Nevertheless, Defendants were aware of Plaintiff's ... therapy group overla-
pping with exercise yard causing Plaintiff to choose therapy group after attending
exercise yard for an hour. However, Defendants were monitering and approving logging
of Plaintiff (among inmates) receiving his alloted 3.5 hours "per exercise yard"
three (3) times a week (Monday, Wednesday, and Friday) for a total of 10 hours.

For example, Defendants had it set up for regular yard to be available only
"one time" on Monday, Wednesday, and Friday from (about) 9:30AM-12:30PM no make up
yard, despite grievance deceptive findings alleging otherwise, because quarantine
yard was same time but only one time Tuesday, Thursday, and Saturday and would
collide with "regular yard"

On Sunday, Defendants designated it as a down day, despite grievance findings
of Sunday being makeup yard day, Plaintiff insist is a deception and no record
of makeup yard occuring on Sunday becaus it never happened while Plaintiff was
there in 3A03 Eop hub from June 30,2022 to December 20,2022 (See appendix I). And
to escape liability, Defendants would be untruthful by reporting Plaintiff attended
yard or refused if yard was cancelled or if Plaintiff was unabled to attend due to
having appointment(s) elsewhere.

Therefore, by design, Plaintiff only had acess to ~~either~~ exercise yard three
times out of the week for no more than an hour for it overlapping with ... therapy
group. And yard was thwarted on weekends due to Defendants logging Plaintiff recei-
ving ten hours of yard within its access Monday,Wednesday, Friday, which caused Pla-
intiff to be confined to his cell stressed, depressed, and angry, culminating to him
hunger striking; wherefore, he lost approximately 30 pounds in seven weeks from June
30,2022 to August 16,2022 and having suicidal ideations that encouraged self injurio-

7

us behavior (SIB) due to exercise yard deprivation that Defendants were aware of for they responded to his mental health crisis when he was removed from his cell for suicidal ideations and processed paperwork for his hunger strike ( see appendix E and H, mental health records due to exercise yard deprivation).

Plaintiff underwent approximately five months ( from June 30,2022 to November 2022) of exercise yard overlapping with therapy group that li mited him to no more than 3.5 hours of exercise yard per week due to Defendants Roqua and Olivias conscious disregard to excessive risk of harm to Plaintiff's health and causing him to undergo unnecessary wanton pain: stress and depression, before he forgoed his ... therapy groups to take advantage of his alloted 10 hours of yard.

Therefore, on weekends, nevertheless, when Defendants had sufficient staff and opportunity, including designated yard observation officer Cortez-Santos to arrange for makeup yard on weekends(by reporting accurate time Plaintiff ( among inmates) accessed yard during weekdays factored in with ... group therapy schedule overlapping), they disregarded such course . But rather under pretenses exaggerated the 3.5 hours at most per week exercise yard to required alloted 10 hours for their misunderstanding, so long as they provided Plaintiff opportunity to alloted 10 hours of exercise yard Monday, Wednesday, and Friday, despite it overlapping with group therapy,they fulfilled their obligation of providing Plaintiff his alloted 10 hours of exercise yard for the week.

Sergeant Guerrero and Defendant Lieutenant (Lt) R. Roqua were the supervising official in EOP hub on weekends who Plaintiff would vent to in addition to grieving for being denied make-up yard on weekend when he only received commonly no more than three (3) hours of exercise yard during weekdays. Defendant would respond that Plaintiff received alloted ten hours during yard access Monday, Wednesday, Friday. Sergeant Silva who did exercise yard audit report on Sunday well as Plaintiff's grievance (inmate 602) findings untruthfully report same thing ( see appendix I, exercise yard deprivation grievance) due to Defendants falsified logging of Plaintiff accessing 10 hours of exercise yard Monday, Wednesday, and Friday.

CLAIM VI

U.S. FIRST AMENDMENT VIOLATION, RETALIATION (ADMINISTRATIVE REMEDIES EXHAUSTED, APPENDIX O)

Plaintiff is pleading that for Defendant Addison RVR charging him with alleged indecent exposure (IEX) he was placed in 3A03, EOP hub, punative segregation at CSP-Corcoran, where he was frequently deprived exercise yard; wherefore, Defendant Roqua was accountable and who Plaintiff grieved (see supra, claim V).

Based on chronology of events, facts and inferences, Roqua took retaliatory action against Plaintiff. Hence, after Plaintiff grieved hunger struck and frequently admitted into crisis bed due to ... yard deprivation that Roqua and Olivias was accountable for ( see appendix H, mental health records), Roqua avenged Plaintiff grieving him by arbitrarily depriving him of due process, liberty interest, in disciplinary hearing for allegedly delaying a peace officer (Defendant ISU Sgt. J. Barrios) in his duty for J. Barrios investigating Plaintiff's allegations of sexual assault by Defendant Rocha during August 26,2022 incident (see claim III). Culminating, Barrios alleged that video footage omits sexual assault occuring; therefore,"delayed his duty." (See appendix F Barrios RVR.)

Plaintiff maintains and proclaimed his innocence at disciplinary Hearing on October 9,2022, and he insisted on invoking video evidence well as evoking Barrios at hearing for questioning. Nevertheless, Roqua ensued to arbitrarily deny Plaintiff video evidence well as presenting Barrios at hearing for questioning without legitimate justification, as he incredibly told Plaintiff to the effect that he was lying. And delaying a peace officer in duty does not require sllowing video evidence (despite RVR being based on video evidence).

In response to Plaintiff's demands for video evidence and he begrudgingly told Plaintiff that he would 'see video footage at his 602 (grievance) hearing that he kn ows Plaintiff submitted because that is his specialty...,"inferring Roqua was aggrieved for Plaintiff exercising his protected right against him for ... yard deprivation, which conduced to him depriving Plaintiff of his liberty interest, due process.

Moreso, when matters got racial due to African Americans (Blacks) inmates[sic] protesting discriminative treatment, in 3A03 EOP hub by Hispanic officials, by refusing to return to cell from small management yard [SMY] ( see infra claim VII) Roqua made reference to Plaintiff's People ( Blacks) being a problem and never satisfied. He then let Plaintiff know of being no different with his 602's hunger strikes and suicidal claims, which could only be in reference to Plaintiff grieving about yard deprivation because bellavior Roqua stressed by Plaintiff was in accordance to yard deprivation.

Roqua's retaliatory conduct did not further legitimate correctional goals and has conduced to discouraging (silencing) Plaintiff' from exercising his constitutional rights in future for ramifications are getting to be too much of a hardship: Roqua apparent avenges resulted into Plaintiff losing 90 days good time credit and privileges. Wherehad Plaintiff not exercised his right, upon information, and beliefs, he would have received a favorable hearing and outcome, with the exception of discriminative treatment for Plaintiff being African American ( see infra, claim VII).

8

CLAIM VII

U.S. FOURTEENTH AMENDMENT VIOLATION, INVIDIOUS DISCRIMINATION (ADMINISTRATIVE
REMEDIES EXHAUSTED, SEE APPENDIX O)

On October 10,2022, Defendant Roqua treated Plaintiff with disparity after
atypically, casually, and without privacy appeared at his cell front for discipli-
nary hearing, delaying peace officer (Defendant Barrios) in his duty.

Therefore, due to disciplinary hearing being conducted in an unusual manner
absent privacy from other inmates for hearing being conducted on tier, Plaintiff
inquired reasoning for disciplinary hearing being conducted in such manner.

Roqua appearing upset and with an axe to grind, responded to the effect,
Because your people want to hold my cages," compelled Plaintiff to elicit from Ro-
qua ~~unreluctant~~ the specific "People" of his reference. And Roqua unreluctantly
stated,"The Blacks." Then he incredibly and undeterred stated in a racist manner,
"who is always the problem; never satisfied.

Roqua was apparently discriminative towards the Blacks by being flustered
for them refusing to comply in returning to their cells after recall of small
management yard (or caged yard/walk alone). The Blacks, among other things, were
protesting being treated with disparity in comparison to Hispanic inmates, who
received favorable RVR hearings and committe actions for serious infractions, which
led to ad-seg placement, and living conditions-in EOP hub- where they were not
subjected to punative cell searches, deprived of canteen or punative, retaliatory
RVR's (among other things). Therefore, in nutshell, Blacks were defiant; however,
Plaintiff has taken this course of action therefor discrimination.

It was apparentt Roqua had prejudice towards Black inmates, which conduced
to him invidiously discriminating against Plaintiff in disciplinary hearing;
wherehad, Plaintiff not been Black, upon facts and beliefs, inferences and
chronology of events, he would have had a favorable hearing and Roqua adhering
to his liberty interest, due process in proving RVR being false and a cover up.

9

CLAIM VIII

28 U.S.C. 1985(3) CONSPIRACY TO DEPRIVE PLAINTIFF OF DUE PROCESS IN SERIOUS
DISCIPLINARY HEARING (ADMINISTRATIVE REMEDIES ARE EXHAUSTED, SEE APPENDIX O)

Defendant Roqua conspired with Defendant J. Barrios to deprive Plaintiff
of his liberty interest due process to cover up and discredit Plaintiff sexual
assault allegations against Defendant Rocha that occured during August 26,2022
incident (claim III).

Hence, on October 10, 2022 during disciplinary hearing for Plaintiff alleg-
edly delaying Officer J. Barrios in his duty, Roqua ensued to arbitrarily deny
Plaintiff all of his constitutional procedural due process to prove his innocence:
i.e., video evidence and calling RVR staff J. Barrios at Hearing for examination,
inter alia.

Plaintiff alleged and sustains is true and correct that on August 26,2022,
Defendant Rocha groped him through food port of his cell-front during an harass-
ing strip search, post punative search of Plaintiff's cell.

Defendant J. Barrios is an institutional Security Unit (ISU) Sergeant who
alleges during investigating Plaintiff's sexual assault allegations video footage
"did not depict" sexual assault. Therefore, Plaintiff is pleading he drafted him
a falsified RVR of delaying him in His official duty ( see appendix F, RVR and
supplemental RVR); moreso, as a cover up.

Since RVR is based on alleged video evidence, Plaintiff adamantly invoked
for it at disciplinary hearing, which was arbitrarily denied, despite Plaintiff
Having liberty interest to Have evidence present at Hearing, yet todate has not be-
en produced for according to findings in investigative employee (I.E.) report by
officer Sierra, " Video evidence is unavailable." ( See appendix F, I.E. report/
RVR supplement and disciplinary hearing result [DHR] pg. 4of 11). Moreso, Plaintiff
has sought video evidence through Public Record Act (PRA) pursuant to Cal Gov.
C § 6250. And PRA coordinator responded video evidence being unavailable for
extending video retention capability. ( See appendix F, Letter from PRA coordina-
tor.)

Nevertheless, Roqua in midst of arbitrarily denying Plaintiff's due process
revealed meeting of minds (among other unconstitutional state of mind ) with
Barrios by letting Plaintiff know his findings of guilt was based on honoring
Barrios RVR and his"recommendations" to find Plaintiff guilty; thus, culminating
to destroying Plaintiff's crdibility in sexual assault allegations against Defend-
ant Rocha well as covering up Plaintiff's allegations, which Plaintiff insist Roq-
ua and Barrios acted in concert to accomplish pursuant to 28 U.S.C. § 1985(3) for
findings of guilt was based on Barrios recommendations rather than (video) evidence.

## E. REQUEST FOR RELIEF

State the relief you are seeking:
Demand for trial

Declaratory relief

Nominal damages .01¢

Punative damages jointly and severly 100,000

Compensatory damages jointly and severly 20,000

Pursuant to 28 U.S.C. 1746 and Fed R. Civ P. 56(e)
I declare under penalty of perjury that the foregoing is true and correct.

Executed on __Februar 27, 2023__
DATE

_____
SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space you may attach more pages, but you are strongly encouraged to limit your complaint to twenty-five pages. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages. Remember, there is no need to attach exhibits to your complaint.

6