1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11   DEWAYNE THOMPSON, | Case No.  1:22-cv-01545-HBK (PC) |
| 12          Plaintiff, | ORDER GRANTING AND DENYING IN PART MOTION FOR MISCELLANEOUS |
| 13       v. | RELIEF |
| 14   L. ADDISON, A. LOPEZ, and J. ROCHA, | (Doc. No. 18) |
| 15          Defendants. | SCREENING ORDER DIRECTING PLAINTIFF TO STAND ON THE SECOND |
| 16 | AMENDED COMPLAINT AND VOLUNTARILY DISMISS CLAIMS |
| 17 | DEEMED NOT COGNIZABLE; OR, |
| 18 | STAND ON SECOND AMENDED COMPLAINT SUBJECT TO COURT |
| 19 | RECOMMENDING DISMISSAL OF CLAIMS DEEMED NOT COGNIZABLE TO THE |
| 20 | DISTRICT COURT[1] |
| 21 | (Doc. No.  15) |
| 22 |  APRIL 11. 2024 DEADLINE |

23         Pending before the Court for screening under 28 U.S.C. § 1915A is the second amended

24   pro se civil rights complaint filed under 42 U.S.C. § 1983 by DeWayne Thompson—a prisoner.

25   (Doc. No. 15, "SAC").  Upon review, the Court finds the SAC states a First Amendment

26   retaliation claim against Defendant Addison, but the remaining claims are either misjoined or fail

27

28   [1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2023).

1   to state a claim.  The Court affords Plaintiff the option to file a notice to proceed only on his

2   claim deemed cognizable or stand on his SAC subject to the Court recommending the district

3   court dismiss any remaining Defendants and claims not deemed cognizable.

## SCREENING REQUIREMENT

5         A plaintiff who commences an action while in prison is subject to the Prison Litigation

6   Reform Act ("PLRA"), which requires, *inter alia*, the court to screen a complaint that seeks relief

7   against a governmental entity, its officers, or its employees before directing service upon any

8   defendant.  28 U.S.C. § 1915A.  This requires the court to identify any cognizable claims and

9   dismiss the complaint, or any portion, if is frivolous or malicious, if it fails to state a claim upon

10  which relief may be granted, or if it seeks monetary relief from a defendant who is immune from

11  such relief.  *See* 28 U.S.C. §§ 1915A(b)(1), (2).

12        At the screening stage, the court accepts the factual allegations in the complaint as true,

13  construes the complaint liberally, and resolves all doubts in the plaintiff's favor.  *Jenkins v.*

14  *McKeithen*, 395 U.S. 411, 421 (1969); *Bernhardt v. L.A. County*, 339 F.3d 920, 925 (9th Cir.

15  2003).  A court does not have to accept as true conclusory allegations, unreasonable inferences, or

16  unwarranted deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.

17  1981).  Critical to evaluating a constitutional claim is whether it has an arguable legal and factual

18  basis.  *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989).

19        The Federal Rules of Civil Procedure require only that a complaint include "a short and

20  plain statement of the claim showing the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).

21  Nonetheless, a claim must be facially plausible to survive screening.  This requires sufficient

22  factual detail to allow the court to reasonably infer that each named defendant is liable for the

23  misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Moss v. U.S. Secret Service*,

24  572 F.3d 962, 969 (9th Cir. 2009).  The sheer possibility that a defendant acted unlawfully is not

25  sufficient, and mere consistency with liability falls short of satisfying the plausibility standard.

26  *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.  Although detailed factual allegations are not

27  required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

28  statements, do not suffice," *Iqbal*, 556 U.S. at 678 (citations omitted), and courts "are not required

1    to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir.

2    2009) (internal quotation marks and citation omitted).

3          The Rules permit a complaint to include all *related claims* against a party and permit

4    joinder of all defendants alleged to be liable for the "same transaction, occurrence, or series of

5    transactions or occurrences" where "any question of law or fact common to all defendants will

6    arise in the action." Fed. R. Civ. P. 18(a) and 20(a)(2) (emphasis added). But the Rules prohibit

7    conglomeration of unrelated claims against unrelated defendants in a single lawsuit. A litigant

8    must file unrelated claims in separate lawsuits.

9          If an otherwise deficient pleading can be remedied by alleging other facts, a *pro se* litigant

10   is entitled to an opportunity to amend their complaint before dismissal of the action. *See Lopez v.*

11   *Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (en banc); *Lucas v. Department of Corr.*, 66 F.3d

12   245, 248 (9th Cir. 1995). However, it is not the role of the court to advise a *pro se* litigant on

13   how to cure the defects. Such advice "would undermine district judges' role as impartial

14   decisionmakers." *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *see also Lopez*, 203 F.3d at 1131

15   n.13. Furthermore, the court in its discretion may deny leave to amend due to "undue delay, bad

16   faith or dilatory motive of the part of the movant, [or] repeated failure to cure deficiencies by

17   amendments previously allowed . . . ." *Carvalho v. Equifax Info. Srvs., LLC*, 629 F.3d 876, 892

18   (9th Cir. 2010).

19                              **MOTION FOR MISCELLANEOUS RELIEF**

20         On February 12, 2024, Plaintiff filed a pleading titled "Motion Requesting to Prosecute

21   Due to Prejudice from Substantial Delay and Consent for District Judge to Preside in case."

22   (Doc. No. 18). In the pleading, Plaintiff asserts, first, that he did not consent to Magistrate Judge

23   jurisdiction, and thus appears to object to the Court's September 14, 2023 Screening Order as

24   issued in excess of the magistrate judge's authority. (*Id*. at 1). Contrary to Plaintiff's assertion,

25   Local Rule 302 specifically refers all cases brought by a person in custody seeking relief

26   authorized by 42 U.S.C. § 1983, including all motions, to a Magistrate Judge. L.R. 302(c)(17)

27   (E.D. Cal. 2023). *See Robinson v. Adams*, 2009 WL 1953167, at *1 (E.D. Cal. July 7, 2009).

28   Thus, Plaintiff's consent is not required for screening.

1    Title 28 U.S.C. § 636(b)(1)(A) permits the district court to designate any pretrial matter to

2    the determination of the magistrate judge, with the exception of "a motion for injunctive relief,

3    for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or

4    information made by the defendant, to suppress evidence in a criminal case, to dismiss or to

5    permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can

6    be granted, and to involuntarily dismiss an action."  Section 636(b)(1)(B) allows the magistrate

7    judge to conduct hearings and submit proposed findings of fact and recommendations to the

8    district court on the excepted motions listed in Section 636(b)(1)(A). Finally, Section 636(b)(3)

9    permits a district court judge to assign the magistrate judge any additional duties not inconsistent

10   with the Constitution and the laws of the United States.

11    In this case, screening pursuant to Section 1915A is not listed as something a Magistrate

12   Judge cannot do, and the applicable Local Rule refers the screening to the Magistrate Judge.

13   Thus, issuance of the September 14, 2023 Screening Order was within the Magistrate Judge's

14   authority.  To the extent Plaintiff seeks reconsideration of the September 14, 2023 Screening

15   Order, the Motion is denied.

16    Plaintiff also contends that screening of his Second Amended Complaint has been subject

17   to undue delay and urges the Court to screen it.  (Doc. No. 18 at 1-2).  This Court has "one of the

18   heaviest caseloads in the nation," and due to the delay in filling judicial vacancies, which was

19   further exacerbated by the COVID-19 pandemic, operates under a declared judicial emergency.

20   *See* Amended Standing Order in Light of Ongoing Judicial Emergency in the Eastern District of

21   California.  Nevertheless, the Court grants Plaintiff's Motion to the extent that it screens his

22   Second Amended Complaint herein.

23                              **SUMMARY OF THE COMPLAINT**

24    The events giving rise to the SAC took place at California State Prison, Corcoran ("CSP-

25   Corcoran").  (Doc. No. 15 at 4).  The SAC names as Defendants (1) L. Addison, Certified Nurse

26   Assistant ("CNA"), (2) A. Lopez, Correctional Officer, and (3) J. Rocha, Correctional Officer.

27   (*Id*. at 3-4).  As discussed further below, the SAC alleges claims for First Amendment retaliation,

28   unconstitutional conditions of confinement in violation of the Eighth Amendment, and a

                                            4

1    Fourteenth Amendment equal protection violation.  (*See generally id*.).  The following facts are

2    presumed true at this stage of the screening process.

3              Claim 1 – First Amendment Retaliation by Defendant Addison

4              On June 30, 2022, Plaintiff was in a crisis bed at CSP-Corcoran, where he was under one-

5    on-one observation by Certified Nurse Assistant Alapisco, who is not named as a party to this

6    action.  (*Id*. at 4).    Plaintiff previously had permission from CNA Alapisco to use a placard to

7    partially block his window so he could have privacy when he removed his smock to exercise and

8    "bird bath [sic]."  (*Id*.).  Alapisco would knock before looking into Plaintiff's cell.   (*Id*. at 4-5).

9    On June 30, 2022, while filling in for CNA Alapisco during a break, Defendant Addison "lifted

10   herself up" to look over the placard and saw Plaintiff naked while exercising and bird-bathing.

11   (*Id*. at 5).  Plaintiff covered himself and "beelined to cell front window" and "aggressively . . .

12   demanded for [Addison] to have courtesy and knock before looking in his cell while [the]

13   window cover was up."  (*Id*.).  Plaintiff "vented" to Addison he was going to "write her up" for

14   this conduct and because the day before she had laughed at a joke made by another staff member

15   about the size of his genitalia.  (*Id*.).  Addison responded, "two can play that game" and

16   immediately filed a Rule Violation Report ("RVR") charging Plaintiff with indecent exposure.

17   (*Id*.).  Due to the RVR, a yellow placard identifying Plaintiff as charged with indecent exposure

18   was placed on his cell door for 90 days.  (*Id*. at 6).  Further, fellow inmates Dominguez, Flores

19   and Cardero threatened Plaintiff with bodily harm and death.  (*Id*.).

20             Claim 2: Eighth Amendment Deliberate Indifference - Defendant Addison

21             Plaintiff alleges that Defendant Addison's filing of the false RVR charges for indecent

22   exposure resulted in him being subjected to a risk of harm to his personal safety.  (*Id*. at 8).

23   Because the RVR resulted in him being classified as a sex offender, a yellow placard was placed

24   on his window for 90 days.[2]  (*Id*. at 8).  Immediately after the placard was affixed to his cell front

25   window, Plaintiff "began receiving death and great bodily harm threats" from fellow inmate

26   _____

27   [2] The SAC states that "Plaintiff permanently had placard fixed to his cell front window for 90 days" thus
     there is some ambiguity as to whether the placard was "permanently" fixed or only temporarily fixed,
     however the Court presumes Plaintiff intended to state that the placard was affixed for 90 days.  (Doc. No.
28   15 at 8).

1   Cardero, a "known violent inmate" who was housed in the cell above Plaintiff.  (*Id*. at 8-9).

2   Cardero would issue threats through the vent connecting their cells and could be heard sharpening

3   knives on the floor of his cell above Plaintiff.  (*Id*.).

4          Plaintiff was later moved to another cell, next to Inmates Dominguez and Flores, who

5   like Cardero are "known violent inmates and registered members of notorious prison and street

6   gangs" who were in administrative segregation for stabbing officers and inmates.  (*Id*. at 9).

7   While Plaintiff was housed next to Dominguez and Flores, they "made convincing, promising

8   threats . . . to slice Plaintiff's face and stab him first chance they get."  (*Id*.).  Plaintiff was moved

9   again after he reported suicidal ideation because of the threats and intimidation by Dominguez

10  and Flores.  (*Id*.).  On an unspecified date, Inmate Cardero "intentionally flooded the tier" with a

11  bucket containing urine and water, "causing Plaintiff['s] cell to be flooded with urinated water"

12  while calling Plaintiff "snitch and sex offender" and threatening to stab him.  (*Id*.).  Plaintiff "is in

13  fear each day for his safety due to the promising threats by" fellow inmates and their gangs.  (*Id*.

14  at 10).

15                    Claim 3: First Amendment Retaliation – Defendants Lopez and Rocha

16         Plaintiff alleges Defendants Lopez and Rocha conducted punitive cell searches against

17  him in retaliation for Plaintiff filing a grievance against Lopez in connection with Plaintiff's

18  August 5, 2022 RVR hearing.  (*Id*. at 11).  Specifically, Plaintiff filed a grievance against Lopez

19  accusing him of lying and violating Plaintiff's due process rights at the August 5, 2022 RVR

20  hearing.  (*Id*.).  Due to his grievance against Lopez, Plaintiff was granted a rehearing on his RVR.

21  (*Id*. at 12).

22         Thereafter, on August 26, 2022, Defendants Lopez and Rocha searched Plaintiff's cell.

23  (*Id*.).  Defendants Lopez and Rocha "vandalized Plaintiff's cell" disposing of and disorganizing

24  his legal materials, throwing away his breakfast and lunch, confiscating the coaxial cable to his

25  television, and "confiscating other non-contraband miscellaneous personal items for no other

26  reason but . . . to silence Plaintiff for exercising his protected right."  (*Id*.).  Officers Lopez and/or

27  Rocha confiscated his "state disposable razor" and issued Plaintiff an RVR for possession of a

28  deadly weapon.  (*Id*. at 13).  Plaintiff was referred for state criminal charges and the charges

6

1    remained pending at the time he filed his SAC.  (*Id*.).  Lopez also confiscated Tylenol and told

2    Plaintiff that he considered "exaggerating" the confiscation of the pills to "punish Plaintiff in

3    retaliation" for possessing unauthorized pills and have him admitted to a crisis bed.  (*Id*. at 14).

4    On Defendants' body worn camera, they admitted the retaliatory intent behind their cell search,

5    stating "we searched your cell for your and ours [sic] protection since you like to file grievances

6    and lawsuits."  (*Id*.).

7          On September 2, 2022, Defendant Rocha again searched Plaintiff's cell and confiscated a

8    "state issued radio another officer provided Plaintiff . . ."  (*Id*.).  Rocha did not leave a cell search

9    receipt in violation of CDCR regulations.  (*Id*.).  Although somewhat unclear, Plaintiff appears to

10   suggest that during the search Rocha planted a razor in Plaintiff's cell to support charges that

11   Plaintiff possessed a deadly weapon.  (*Id*.).  Plaintiff immediately gave the razor to Sgt. Garcia.

12   (*Id*.).

13          Claim 4: Fourteenth Amendment Equal Protection Claim - Defendants Lopez and Rocha

14          Plaintiff alleges Defendants Lopez and Rocha discriminated against him because he is

15   African American.  (*Id*. at 15).  Plaintiff claims that due to his race, he is treated differently from

16   the Hispanic inmates.  (*Id*.).  Plaintiff states he and other African-American inmates are

17   repeatedly issued RVRs and subjected to cell searches, but Hispanic inmates are not issued RVRs

18   or subjected to cell searches.  (*Id*.).  Plaintiff asserts that on the same day that Defendants Rocha

19   and Lopez conducted a search of his cell, Inmates Flores and Dominguez shattered the window of

20   their cell, but Defendants Rocha and Lopez "only laughed and joked about it."  (*Id*.).

21          Relief Requested

22          As relief for the above claims, Plaintiff seeks declaratory relief, compensatory damages,

23   nominal damages, punitive damages, and a jury trial.  (*Id*. at 17).

24                                **APPLICABLE LAW AND ANALYSIS**

25   **A. Related Claims and Joinder**

26          As an initial matter, certain of Plaintiff's claims are misjoined.  The Rules permit a

27   complaint to include all *related claims* against a party and permit joinder of all defendants alleged

28   to be liable for the "same transaction, occurrence, or series of transactions or occurrences" where

1   "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P.

2   18(a) and 20(a)(2) (emphasis added).  But the Rules do not permit conglomeration of unrelated

3   claims against unrelated defendants in a single lawsuit.  Unrelated claims must be filed in

4   separate lawsuits.

5           The controlling principle appears in Fed. R. Civ. P. 18(a): 'A party
            asserting a claim to relief as an original claim, counterclaim, cross-
6           claim, or third-party claim, may join, either as independent or as
            alternate claims, as many claims, legal, equitable, or maritime, as the
7           party has against an opposing party.'  Thus multiple claims against a
            single party are fine, but Claim A against Defendant 1 should not be
8           joined with unrelated Claim B against Defendant 2.  Unrelated claims
            against different defendants belong in different suits, not only to
9           prevent the sort of morass [a multiple claim, multiple defendant] suit
            produce[s], but also to ensure that prisoners pay the required filing
10          fees-for the Prison Litigation Reform Act limits to 3 the number of
            frivolous suits or appeals that any prisoner may file without
11          prepayment of the required fees.  28 U.S.C. § 1915(g).

12  *K'napp v. California Dept. of Corrections*, 2013 WL 5817765, at *2 (E.D. Cal., Oct. 29,

13  2013), *aff'd sub nom. K'napp v. California Dept. of Corrections & Rehabilitation*, 599 Fed.

14  Appx. 791 (9th Cir. 2015) (alteration in original) (quoting *George v. Smith*, 507 F.3d 605, 607

15  (7th Cir. 2007).

16          Here, only Plaintiff's Claims 1 and 2 in the SAC are related and will be addressed below.

17  Plaintiff's Claims 3 and 4 are not related to Claims 1 and 2.  The fact that Claim 3 alleges

18  retaliation by other staff within the same facility is not sufficient to establish that it is related to

19  Claims 1 and 2 and therefore properly joined.  *See Camposeco v. Bordeaux*, 2020 WL 5984420,

20  at *5 (E.D. Cal. July 31, 2020) (Merely "because the claims arose while plaintiff was at the same

21  institution does not make the claims properly joined.").  The events giving rise to Claim 3 are

22  tangentially related to Plaintiff's claims against Defendant Addison, because they resulted from

23  Plaintiff's RVR for indecent exposure and Plaintiff's subsequent grievance against Defendant

24  Lopez.  However, the later cell searches by Defendants Lopez and Rocha are only tenuously

25  connected to the initial events involving Defendant Addison that give rise to Claim 1 and 2.  They

26  arise from distinct incidents, involve different Defendants, and thus are not properly joined under

27  either Rule 18 or Rule 20.  As to Claim 4, Plaintiff's equal protection claim is based largely on

28  the events giving rise to Claim 3, and thus is likewise misjoined.  Therefore, the Court only will

8

1    address whether Claims 1 and 2 state a cognizable claim in this screening order.  To the extent

2    Plaintiff wishes to prosecute his misjoined claims, he must file them in a separate complaint.

3            **B. First Amendment Retaliation**

4            It is clear prisoners have First Amendment rights to file a grievance or civil rights

5    complaint against correctional officials.  *Brodheim v. Cry*, 584 F. 3d 1262, 1269 (9th Cir. 2009).

6    To state a claim for First Amendment retaliation, a plaintiff must allege five elements: (1) he

7    engaged in protected activity; (2) the state actor took an adverse action against the plaintiff; (3) a

8    causal connection between the adverse action and the protected conduct; (4) the defendant's

9    actions would chill or silence a person of ordinary firmness from protected activities; and (5) the

10   retaliatory action did not advance a legitimate correctional goal.  *Chavez v. Robinson*, 12 F.4th

11   978, 1001 (9th Cir. 2021) (quoting *Rhodes*, 408 F.3d at 567–68).  A retaliatory motive may be

12   shown by the timing of the allegedly retaliatory act or other circumstantial evidence, as well as

13   direct evidence.  *Bruce v. Ylst,* 351 F.3d 1283, 1288–89 (9th Cir. 2003); *McCollum v. Ca. Dep't*

14   *of Corr. And Rehab*., 647 F.3d 870, 882 (9th Cir. 2011).  Mere speculation that a defendant acted

15   out of retaliation is not sufficient.  *Wood v. Yordy,* 753 F.3d 899, 905 (9th Cir. 2014) (citing

16   cases).

17           Plaintiff states he "vented" at Addison and admits the RVR characterized his behavior

18   towards Addison as aggressive.  (Doc. No. 15 at 5).  The SAC appears to acknowledge his

19   interaction with Addison may have been hostile.  The "use of foul language towards prison staff

20   is not protected conduct."  *Mitchell v. Hernandez*, 2008 WL 2489210, *3 (E.D. Cal. June 17,

21   2008).  In fact, "a number of district courts have [held] verbal challenges to prison officials that

22   are argumentative, confrontational, and disrespectful are not protected by the First Amendment."

23   *Jackson v. Austin*, 2014 WL 4656201, *34 (E.D. Cal. Sept. 16, 2014); *Johnson v. Carroll*, 2012

24   WL 2069561, *33–34 (E.D. Cal. June 7, 2012) (district court found plaintiff's statements that

25   were argumentative, confrontational, disrespectful, and "laced with expletives," were not

26   protected speech).  At this stage however, without more, the Court finds Plaintiff's statements to

27   Addison that he would "write her up" to be protected First Amendment conduct.  *See Uribe v.*

28   *McKesson*, 2011 WL 9640, at *12 (E.D. Cal. Jan. 3, 2011) ("In the retaliation context, there is no

1  'legal distinction . . . between the filing of a charge which is clearly protected . . . and threating to

2  file a charge.'") (quoting *Gifford v. Atchison, Topeka, & Santa Fe Ry. Co.*, 685 F.2d 1149, 1155-

3  56 n.3 (9th Cir. 1982)); *see also Botts v. Shepard*, 2022 WL 782383, at *3 (S.D. Cal. Mar. 14,

4  2022) ("it is clearly established that a prisoner's grievance, or threat or notice of intent to file a

5  grievance, is protected from retaliation.") (citing *Rhodes*, 408 F.3d at 559).

6        In response, Addison took "immediate" action, charging Plaintiff with an RVR for

7  indecent exposure.  Addison's statement that "two can play that game" and the temporal

8  proximity of the issuance of the RVR satisfies a finding that Plaintiff's protected conduct was a

9  "substantial or motivating factor for the alleged retaliatory action."  *Brodheim*, 584 F.3d at 1271

10  (internal quotations and citations omitted); *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th

11  Cir. 2019) (plaintiff must show the defendant's "retaliatory animus was a 'but-for' cause,

12  meaning that the adverse action against the plaintiff would not have been taken absent the

13  retaliatory motive.") (internal quotations and citation omitted).  Thus, the second and third

14  elements of a retaliation claim are met.  The Court notes, however, a constitutional violation does

15  not exist if the action is only colored by some degree of bad motive and would have been taken

16  anyway.  *See Crawford-El v. Britton*, 523 U.S. 574, 593 (1998); *Hartman v. Moore*, 547 U.S.

17  250, 260 (2005) (holding if retaliation is not the "but-for" cause, "the claim fails for lack of causal

18  connection between unconstitutional motive and resulting harm, despite proof of some retaliatory

19  animus in the official's mind.")

20        Turning to the fourth element, whether Defendant Addison's conduct would chill "an

21  ordinary person of firmness," is an objective analysis.  *Rhodes*, 408 F.3d at 569.  While a plaintiff

22  is not required at the pleading stage to demonstrate a total chilling of his First Amendment rights,

23  he meets the fourth element required for a retaliation claim alleging Defendant Addison's acts

24  would have chilled a person of ordinary firmness.  The filing of the false RVR carries varied

25  disciplinary consequences and would chill an ordinary person.  *Watison v. Carter,* 668 F.3d 1108,

26  1115 (9th Cir. 2012) (finding that inmate had stated a retaliation claim where he had alleged that

27  the prison officer filed a false disciplinary charge against him, placed him in administrative

28  segregation, and interfered with his parole hearing).

1          Finally, the fifth element is met because the filing of a false RVR does not serve a

2    legitimate penological interest.  *See Blair v. Herrera-Salazar*, 2020 WL 5642454, at *5 (S.D. Cal.

3    Sept. 22, 2020) ("If a defendant's motive for issuing the RVR was retaliatory, no legitimate

4    penological interest would be served.") (citing *Gray v. Hernandez*, 651 F.Supp. 2d 1167, 1184

5    (S.D. Cal. 2009)); *Savage v. Villagrana*, 2011 WL 4375011, at *3 (E.D. Cal. Sept. 19, 2011);

6    *Patkins v. Koenig*, (N.D. Cal. Apr. 23, 2021); *Garcia v. Kernan*, No., 2019 WL 3429175, at *12

7    (S.D. Cal. July 30, 2019).

8          Thus, the Court finds the FAC states a cognizable First Amendment retaliation claim

9    against Defendant Addison.

10         **C.  Eighth Amendment Deliberate Indifference**

11         Under the Eighth Amendment, prison officials have an affirmative obligation to protect

12   prisoners from violence inflicted by other prisoners.  *Farmer v. Brennan*, 511 U.S. 825, 833

13   (1994); *Lobated v. Corrs. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013).  A prison official's

14   failure to protect an inmate arises only if the prison official is aware of and disregards a

15   substantial risk of serious harm to the plaintiff.  *Thomas v. Hernandez*, 2022 WL 1173339, at *4

16   (E.D. Cal. Apr. 20, 2022).  "Whether a prison official had the requisite knowledge of a substantial

17   risk is a question of fact subject to demonstration in the usual ways, including inference from

18   circumstantial evidence, . . . and, a factfinder may conclude that a prison official knew of a

19   substantial risk from the very fact that the risk was obvious."  *Farmer*, 511 U.S. at 842.

20   Deliberate indifference requires a showing of both objective and subjective components.  *Clement*

21   *v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).  The objective component requires a prisoner

22   demonstrate "he was deprived of something sufficiently serious."  *Foster v. Runnells*, 554 F.3d

23   807, 812 (9th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834).  The risk must be "substantial," but it

24   is well settled "a prisoner need not wait until he is actually assaulted before obtaining relief."

25   *Helling v. McKinney*, 509 U.S. 25, 33 (1993); *see also Farmer*, 511 U.S. at 845.

26         The SAC alleges Defendant Addison was deliberately indifferent to a serious risk to

27   Plaintiff's safety because she filed a false RVR for indecent exposure knowing that doing so

28   would expose Plaintiff to harm from other inmates.  (Doc. No. 15 at 8).  Immediately after

                                                11

1    Plaintiff was charged with the indecent exposure RVR, various inmates, including Dominguez,

2    Flores, and Cardero, verbally threatened to harm Plaintiff in graphic terms, taunted him through

3    their shared vents, referred to him as a "snitch" and a sex offender, and flooded his cell with a

4    bucket of urine and water.  (*Id*. at 8-10).  The SAC alleges that Plaintiff suffered an anxiety attack

5    and contemplated self-harm due to the "psychological torment" inflicted by Inmates Dominguez

6    and Flores, which caused him stress and lack of sleep.  (*Id*. at 9).

7            In certain circumstances, being falsely labeled a sex offender in prison can be sufficient to

8    satisfy the objective component of a deliberate indifference claim.  *See Neal v. Shimoda*, 131 F.3d

9    818, 829 (9th Cir. 1997) (analyzing due process claim and stating, "We can hardly conceive of a

10   state's action bearing more 'stigmatizing consequences' than the labeling of a prison inmate as a

11   sex offender"); *Nailing v. Fosterer*, 2012 WL 1130655 at *8 (E.D. Cal. Mar. 2, 2012) (finding

12   Eighth Amendment deliberate indifference claim sufficiently pled because "a reasonable jury

13   could conclude that defendants were deliberately indifferent to the generally known risk sex

14   offenders face in the prison general population"); *but see Morris v. Yavari*, 2022 WL 18494649,

15   at *6 (C.D. Cal. Nov. 29, 2022), *report and recommendation adopted*, 2023 WL 1071989 (C.D.

16   Cal. Jan. 27, 2023) (finding posting of yellow placard due to credible accusation of indecent

17   exposure did not satisfy objective component of deliberate indifference where no harm resulted).

18           Even assuming the risk of Plaintiff being attacked for being charged with indecent

19   exposure was objectively serious, and that Defendant Addison was indifferent to the risk, it is

20   uncontested that Plaintiff was never physically injured because of the indecent exposure charge.

21   Indeed, Plaintiff acknowledges he was moved after he reported the threats.  The PLRA states in

22   pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail,

23   prison, or other correctional facility, for mental or emotional injury suffered while in custody

24   without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  This provision requires "a

25   prior showing of physical injury that need not be significant but must be more than de minimis."

26   *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002).

27           Further, Plaintiff here seeks damages, which require a showing of physical injury.  "While

28   a prisoner need not wait to be injured before seeking injunctive relief, *see Farmer*, 511 U.S. at

1    845 [ ], a prisoner seeking damages must allege that the risk materialized and caused him physical

2    injury." *Rodrigues v. Norwood*, 2010 WL 2740174, at *3 (C.D. Cal. July 9, 2010) (citing 42

3    U.S.C. § 1997e(e)'s physical-injury requirement and *Babcock v. White*, 102 F.3d 267, 272 (7th

4    Cir. 1996)); *see also Grimes v. Pfiel*, 2011 WL 13140721, at *1 (C.D. Cal. May 31, 2011), *aff'd*,

5    502 F. App'x 701 (9th Cir. 2013) ("Where a risk has not materialized, such that a prisoner has

6    suffered no injury from the alleged risk, a 'sufficiently serious' condition does not exist to support

7    a claim for violation of the Eighth Amendment.").

8          Plaintiff cites the *Timberland* case, where a prisoner plaintiff adequately alleged an Eighth

9    Amendment failure to protect claim where he was, inter alia, "attacked with urine" by inmates

10   after being falsely labeled a "snitch" by correctional staff.   *Timberland v. Mascarenas*, 2018 WL

11   4350066, at *3 (E.D. Cal. Sept. 10, 2018), report and recommendation adopted, 2018 WL

12   4951904 (E.D. Cal. Oct. 12, 2018).  However, in that case, the court noted that plaintiff

13
14
15
16
> suffered physical injury on numerous occasions - being spit on; being
> gassed, the practice of throwing feces, urine, or a mixture of both, on
> him; being the target of homemade darts and arrows using blowguns
> and bows, these being dipped in feces and/or urine, designed to cause
> illness and infection. On one occasion, a wheelchair-bound inmate
> squirted the contents of his colostomy bag on Plaintiff.

17   *Timberland* at *4.  Here, by contrast, Plaintiff was not physically injured in any way; Defendant

18   Cardenas "flooded the tier" with a mixture of water and urine that was apparently meant to seep

19   into Plaintiff's cell and did so.  However, this amounts at most to a de minimis injury insufficient

20   to meet the physical injury requirement of 42 U.S.C. § 1997e(e).

21         Nor can Plaintiff establish an Eighth Amendment violation based on an imminent threat to

22   his safety.  To the extent discernible, the SAC states that Plaintiff's RVR hearing on the indecent

23   exposure charge was suspended and a rehearing has not yet occurred.  (Doc. No. 15 at 6).

24   Further, Plaintiff has since transferred to California State Prison – Sacramento.  (*See* Doc. No. 8).

25   While the SAC alleges that the inmates who threatened Plaintiff are members of a prison gang

26   who could attack him in the future, this vague prospect is too remote to constitute an imminent

27   threat.  *See Funk v. Schriro*, 2009 WL 4898262, at *7 (D. Ariz. Dec. 14, 2009) (finding a

28   plaintiff's claim that he was "forced to endure a 'constant threat of violence'" is too general and

1  conclusory to make the objective showing required on an Eighth Amendment claim.").

2  Absent any physical injury from Defendant Addison's alleged failure to protect or deliberate

3  indifference, the SAC fails to allege a cognizable Eighth Amendment violation against her.

4  **OPTIONS**

5  Liberally construing the SAC and accepting the allegations as true, the Court finds the

6  SAC sufficiently states a First Amendment retaliation claim against Defendant Addison but fails

7  to state any other cognizable properly joined claims.  The Court reiterates that it has not found

8  that Claims 3 and 4 do not state claim, rather Claims 3 and 4 are misjoined and Plaintiff would

9  need to raise them in a separate complaint.  To continue the prosecution of this action, Plaintiff

10  must take one of the following three options **no later than April 11, 2024.**

11  **First Option**:  Plaintiff may file a "Notice under Rule 41 and Federal Rule of Civil

12  Procedure ("FRCP")15" stating he intends to proceed only on the above claim deemed

13  cognizable, specifically his First Amendment retaliation claim against Defendant Addison,

14  thereby voluntarily dismissing the remaining claims and Defendants without prejudice.  The

15  Court would then order service on Defendant Addison and direct her to respond to the SAC as

16  screened herein.  **Second Option**: Plaintiff may file a Notice to Stand on his SAC and the

17  undersigned will issue a Findings and Recommendation to the district court to dismiss the

18  remaining claims the Court has deemed not cognizable.  If Plaintiff fails to timely respond to this

19  Court Order, *i.e.*, fails to elect and notify the Court of either option, the undersigned will

20  recommend that the district court dismiss this case as a sanction for Plaintiff's failure to comply

21  with a court order and for failing to prosecute this action after the Court issued a screening order.

22  *See* Local Rule 110; Fed. R. Civ. P. 41(b).

23  Accordingly, it is **ORDERED:**

24  1.  Plaintiff's Motion for Miscellaneous Relief (Doc. No. 18) and DENIED in part and

25  GRANTED in part as set forth above,

26  2.  **No later than April 11, 2024** Plaintiff shall elect one of the following options and

27  deliver to correctional officials for mailing: (a) a "Notice Under Rule 41 and FRCP

28  15" that he intends to stand on the SAC as screened, thereby dismissing certain claims

1    for the reasons stated in this Order; or (b) a "Notice to Stand on SAC" subject to the

2    undersigned recommending the district court dismiss the claims deemed not

3    cognizable.

4    3.  If Plaintiff fails to timely comply with this Court Order or seek an extension of time to

5        comply, the Court will recommend the district court dismiss this action for Plaintiff's

6        failure to comply with this Court Order and prosecute this action.

Dated:    March 11, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

15